MAIN, Justice.
Regions Bank (“Regions”), as sole trustee of the J.F.B. Lowrey Trust (“the Low-rey Trust”), appeals the Monroe Circuit Court’s order denying Regions’ motion to award it attorney fees and costs.[1] Sam G. Lowrey, Jr., and Shelby Lowrey Jones, two of the current beneficiaries of the Lowrey Trust (Sam G. Lowrey, Jr., and Shelby Lowrey Jones are hereinafter referred to collectively as “the beneficiaries”) cross-appeal from the trial court’s judgment in favor of Regions on their breach-of-fiduciary-duty claim.
I. Facts and Procedural History
On December 11, 2007, the beneficiaries sued Regions, alleging breach of fiduciary duty. The beneficiaries claimed that Regions failed to protect and preserve the assets of the Lowrey Trust, which consisted primarily of approximately 20,000 acres of timberland located in Monroe and Cone-cuh Counties and which have been the subject of much intra-family litigation as the trial judge set out in its order and judgment as follows:
“II. Prior Litigation and Court Order History
“There has been considerable intra-family litigation over the years pertaining to the Lowrey Trust, and this Court has issued several orders that have a direct bearing on the issues in this case. The first pertinent order was the Consent Decree (the ‘1990 Order’) dated July 6, 1990, entered in ‘H. Lowrey McNeil, et al., v. Samuel Graves Low-rey. et al.,’ Case No. CV-88-114. See Defendant’s Exhibit 66. The more significant provisions of this order are as follows:
“-AmSouth Bank was appointed as co-trustee along with Sam Lowrey, Sr.
“-The two trustees were required to select an independent, neutral professional forestry consultant whose primary task was to recommend a timber management plan to the trustees.
“-The timber management plan was to ‘balance the interest of the successive income beneficiaries of the Trust and the remainder interest.’ The plan was not to endanger ‘the safety of the principal in order to produce a large income’ or sacrifice ‘income for the purpose of increasing the value of the principal.’
“-Distributable income from the Low-rey Trust was to be based on the annual growth of the forest, and the timber management plan was to provide for cutting ‘at least 87% of the average annual growth of the forest during each five-year period, but not less than 75% of the annual growth in any single year.’
“-The timber management plan was to be periodically reviewed and updated.
“In response to this Order, Mr. Low-rey and AmSouth Bank selected Pom-eroy & McGowin as the independent forestry consultant, and Pomeroy submitted a timber management plan. This plan was in effect for 10 years into 2000 and called for a thinning of mature natural pine stands rather than an aggressive clear-cutting plan. It is undisputed that the selection of Pomeroy & McGowin was appropriate. No one contends that the Pomeroy plan was in *213 consistent with the 1990 Order, and the [beneficiaries] stipulated during the trial that they had no complaint concerning this plan or the manner in which the Bank had implemented it.
“Further court proceedings occurred in 1993. These proceedings ultimately resulted in an Order and Judgment dated July 21, 1993 (the 1993 Order’). See Defendant’s Exhibit 69. This Order made AmSouth Bank the sole trustee of the Lowrey Trust and vested the Bank with additional powers and authorities beyond those specified in the Will. Included among these additional powers and authorities were the following:
“c. To hold and retain without liability for loss or depreciation any real or personal property ... without regard to any statutory or constitutional limitations applicable to the investment of funds and though the retention might violate principles of investment diversification, so long as the trustee shall consider the retention for the best interests of the trust.
“d. To sell at public or private sale ... or otherwise dispose of all or any portion of the trust in such manner and upon such terms and conditions as the trustee may approve.
“1993 Order, paragraph 3. As acknowledged by the Bank’s witnesses, this language from the 1993 Order did not require the Bank to retain the timberland; however, it authorized the Bank to either retain or sell the timberland as it thought best, without concern over specific investment rules or principles of diversification.”
On September 16, 2004, Hurricane Ivan made landfall and moved over Monroe and Conecuh Counties, causing severe wind damage and destruction of much of the standing timber owned by the Lowrey Trust. In their complaint, the beneficiaries averred that Regions failed to discharge its duty to protect and preserve the assets of the Lowrey Trust and claimed losses amounting to approximately $13,000,000. Specifically, the beneficiaries asserted that Regions should have purchased casualty-loss insurance on the timber, should have sold most of the timberland before Hurricane Ivan in order to diversify the investments of the trust estate, should have cut the timber more rapidly, or should have pursued some combination of these tactics in order to preserve the corpus of the Lowrey Trust.
From June 28, 2010, through July 2, 2010, the trial court conducted a 5-day bench trial, at which ore tenus evidence was received and 12 witnesses testified. On August 2, 2010, as trustee of the Low-rey Trust, Regions filed a motion to award attorney fees and costs and requested an evidentiary hearing on its motion. Regions also moved for the joinder of Ala-Trust, Inc., which was named the successor trustee of the Lowrey Trust on August 3, 2010. The trial court scheduled several evidentiary hearings, but continued those dates. On March 9, 2011, without conducting an evidentiary hearing on Regions’ motion, the trial issued an order denying Regions’s motion to award attorney fees and reserved ruling on an award of costs.
The following day, on March 10, 2011, the trial court entered a detailed order in favor of Regions, rejecting the beneficiaries’ claims of mismanagement of the trust assets and taxing costs against the beneficiaries. The trial court, in its order and judgment, found as follows:
“The [beneficiaries] have the burden of proof in this matter, and that requires showing what [Regions] should have done, how [Regions] failed to do so, and how any such failure proximately caused damage to the Trust and in what *214 amount. The [beneficiaries] have failed to meet this burden.
“The [beneficiaries’] theories of the case were maintained on display during trial on a large chart: 1). failure to diversify 2). failure to insure and/or 3). failure to aggressively cut the trees.
“A. Diversification
“It is undisputed that the Lowrey Trust assets were not diversified across investment classes. It is also undisputed that [Regions] inherited these assets from the former trustee. Thus, the [beneficiaries’] burden is to prove that [Regions’] decision not to sell the Low-rey Trust timberland prior to Hurricane Ivan constituted a breach of fiduciary standards in effect at that time based on what was known at that time.

“Substantive Law Concerning Diversification

“At all material times prior to Hurricane Ivan, the general standards governing investment decisions were provided by Ala.Code [1975,] § 19-3-120.2.
“[Regions’] witnesses were asked repeatedly about their reasons for not selling the Lowrey Trust timberland. One common response referred to the various Court orders noted above. The most obvious order in this regard is the 1993 Order. Paragraph 3(c) of that order specifically allowed [Regions] to retain all Trust assets even though ‘the retention might violate principles of investment diversification.’ See Defendant’s Exhibit 69. Among other things, this order means that [Regions] was not required to diversify the Lowrey Trust assets by selling most of the timberland. See also Ala.Code [1975,] § 19-3-120.2(d) and (e).
“The 1993 Order did add the phrase ‘so long as the trustee shall consider the retention for the best interests of the trust.’ Carroll Blow, head of [Regions’] trust administration department in Mobile at the time of [Hurricane] Ivan, testified that he considered retention of the timberland to be in the best interest of the Lowrey Trust both before Ivan and to this day. The other [Regions] witnesses repeatedly asserted their belief that retention of the timberland was proper. [Regions] presented documentary records showing that it annually considered whether to retain or sell the Lowrey Trust timberland and always determined to keep it. See Defendant’s Exhibit 101. The evidence shows that the [beneficiaries] themselves considered retention of the timberland to be in their best interest prior to the filing of this lawsuit. Based on these facts, the Court concludes that [Regions] determined in good faith that the retention of the Low-rey Trust timberland was in the best interests of the Trust within the meaning of the 1993 Order.
“While the other Court orders do not specifically speak to the diversification issue, several of them reflect an express or implied understanding that timberland would continue to be the principal asset of the Lowrey Trust. The 1990 Order, for example, tied the measurement of Trust income to the growth of the forest. The August 3, 1998 Order (Defendant’s Exhibit 74) refers in paragraph 10 to certain family members as lacking the expertise necessary ‘to manage the trusts’ timberlands’ and goes on to find that AmSouth Bank ‘has a good reputation and extensive experience in administering timberlands of the kind owned by this trust.’ Based on this evidence, the Court concludes that it was reasonable for [Regions] to assume that all interested persons, as well as the Court, expected that the timberlands would be retained.
*215 “Testimony was also offered by [Regions’] witnesses to the effect that selling the Lowrey Trust timberlands would have generated a considerable capital gains tax because the tax basis of the land was very low. Mr. Blow, a tax lawyer, testified that the combined Alabama and federal capital gains rates over the years have ranged from 33% down to 20-25%. Section 19-3-120.2(a) provides that tax considerations are to be considered in making investment decisions. Certainly, the fact that 20-33% of the timberland sales proceeds would be lost to taxes if the land was sold is a factor that reasonably weighs against any decision to sell the land. The evidence also reflected that income generated from the sale of timber is treated as capital gains rather than as ordinary income, thus providing an additional advantage to timberland as an investment.
“Don Heath, head of the [Regions’] natural resources department in Birmingham, testified that the Lowrey Trust timberland had achieved an internal rate of return of approximately 11% through 2007, even after adjusting for the loss caused by [Hurricane] Ivan. Several subsections of Ala.Code [1975,] § 19-3-120.2[,] provide that a trustee may consider overall economic conditions and expected returns from an investment in making decisions. While the [beneficiaries] accurately noted, that this precise number was calculated after Ivan and, thus, was not specifically available from year to year for purposes of making a decision, the point essentially was that timberland in south Alabama has proven over the years to be a good investment generally and that timber-lands in Monroe and Conecuh Counties are no exception notwithstanding Ivan damage.
“[Regions’] witnesses also testified that the Lowrey Trust beneficiaries were opposed to selling timberland over the years. Indeed, Mr. Lowrey testified that he did not want the Trust to sell at least what he described as the ‘core’ 10,000 acres that his grandfather originally owned, and he indicated that no beneficiary ever supported any sale of timberland until cash flow needs arose in apparently 2007. While the beneficiaries clearly did not have the authority to force or prevent a sale of the trust’s timberlands, the interests or preferences of the beneficiaries of a trust is certainly something that a trustee may consider when making a decision about trust assets. See Ala.Code § 19-3-120.2(a) and (b).
“As noted above, subsection (d) of Section 19-3-120.2 specifically provides that a trustee will not be liable for holding assets in an account if ‘in the exercise of good faith and reasonable prudence’ it considers that to be in ‘the best interest of the account or in furtherance of the goals of the governing instrument.’ The 1993 Order required only that [Regions] conclude that retention was in the ‘best interest’ of the trust. Based on all the evidence discussed above, the Court finds that [Regions] acted in good faith and with reasonable prudence in determining that it was in the best interest of this Trust and that it furthered the goals set out by Mr. Low-rey in his Will to retain the Lowrey Trust timberlands. In short, the Court holds that Section 19-3-120.2(d) and the 1993 Order, together with the language of the Will expressing Mr. Lowrey’s intent and other circumstances of the Lowrey Trust, all authorized [Regions] to retain the Lowrey Trust timberland notwithstanding any general principles pertaining to investment diversification.
“B. Casualty Loss Insurance
*216 “The [beneficiaries] have also maintained that [Regions] should have purchased standing timber casualty-insurance. Other than showing that insurance of this type was available on a limited basis, the [beneficiaries] have provided no evidence — expert or otherwise — that any similarly situated trustee prior to [Hurricane] Ivan would have purchased, or even considered purchasing, standing timber insurance. In fact, the [beneficiaries’] fiduciary expert, Mr. [Tom] Crews, testified exactly to the contrary— namely, that failing to purchase standing timber insurance (or even inquire about it) would not constitute a breach of fiduciary duty. The [beneficiaries’] timber management expert, Mr. [Jack] Fillingham, is a principal with the Sizemore & Sizemore firm in Tallassee, Alabama, which manages some 100,000 acres of timberland. Mr. Fillingham testified that his firm does not have standing timber insurance on any of this timberland and that, in fact, he did not even know whether insurance was available. Dr. Ed Wilson, whose deposition was submitted by agreement, is virtually the only insurance agent who has consistently offered standing timber insurance, and he has done so only since 1990. His testimony was that large, institutional owners of timberland do not buy this insurance product, unless they have special, short-term reasons for it. Thus, the evidence in fact supports a finding that similarly situated fiduciaries would not have purchased any standing timber insurance prior to [Hurricane] Ivan.
“Mr. Heath, the head of [Regions’] natural resources department, testified that he had inquired generally into the availability and cost of timber insurance prior to Hurricane Ivan and had concluded that it was too expensive in light of the small risk of loss that existed for timberland. Mr. Markel Wyatt, head of the Mobile office of [Regions’] natural resource department, and others corroborated Mr. Heath’s testimony. Mr. Heath acknowledged that he had not obtained any specific quotes or proposals for insurance coverage for the Low-rey Trust in particular and that he did not currently have any documents reflecting that he had made these inquiries. He also acknowledged that his decision not to buy the insurance was made for all [Regions’] trusts as a group rather than separately for each trust. While not without some significance, these points are entirely consistent with the other evidence that large timber owners do not purchase standing timber insurance. Accordingly, the Court concludes that no breach-of-fiduciary-duty claim can be sustained on this basis.
“C. Timber Cutting Plans
“The [beneficiaries] claim that the lands should have been rapidly clear cut so that fewer large, mature trees would have been in place to be damaged by the storm. The [beneficiaries’] claim against [Regions] is complicated by the active role that timber consultants have taken in this regard.
“As noted above, the [beneficiaries] stipulated during the trial that they had no complaint concerning the selection of Pomeroy & McGowin as consultants in 1990, no complaint concerning the timber management plan proposed by Pom-eroy, and no complaint concerning the execution of that plan. The Pomeroy plan extended 10 years from 1990 until at least 2000.
“In 1997, before the Pomeroy plan had been fully implemented, [Regions] retained Larson & McGowin, a timber consulting firm out of Mobile, to provide *217 additional timber management advice. Larson & McGowin recommended some modifications to the Pomeroy plan under which there would continue to be a thinning of mature trees but some clear cutting would be incorporated as well. Consistent with the 1990 Order, these recommendations were predicated on an allowable cut each year of at least 87% of growth. In 2000, Larson & McGowin gave additional advice to the effect that the cut rate could be increased to 100% of growth without causing harm to the forest or the general objectives. As with the Pomeroy work, the [beneficiaries] stipulated during the trial that they had no complaints about the selection of Larson & McGowin as timber consultants, no complaints about the recommendations made by Larson & McGow-in, and no complaint about [Regions’] implementation of those recommendations.
“The substantive trust law in effect prior to [Hurricane] Ivan provided that a trustee was authorized to ‘[e]mploy and compensate ... persons deemed by the trustee needful to advise or assist in the property management and administration of the trust, ... and to do so without liability for any neglect, omission, misconduct, or default of the agent or representative, provided the trustee acted as a prudent person in selecting and monitoring the agent or representative.’ Ala.Code [1975,] § 19-3-322 (1997 Repl.). The import of this statute is to relieve a trustee of liability for relying on its consultants’ recommendations so long as the consultant was prudently selected and monitored. It is undisputed that Larson & McGowin was prudently selected, and the Court is aware of no claim that they were not prudently monitored. Thus, the statute exonerates [Regions] from any liability so long as [Regions] executed the Larson & McGowin recommendations, and the [beneficiaries] stipulated that [it] did so.
“The [beneficiaries] offered no evidence that a similarly situated fiduciary would have implemented a rapid clear cutting plan in 1997 or instructed Larson & McGowin to propose such a plan. The [beneficiaries] offered no compelling evidence that implementing a rapid clear cutting plan in 1997 would have been appropriate for the Lowrey Trust in light of all the circumstances.
“D. Combination Claim
“As noted above, the [beneficiaries] asserted at trial that [Regions] could, in the alternative, have pursued some combination of the three alleged risk prevention methods. Given the deficiencies with each of the claims considered separately, the Court is not able to see how an analysis of the three methods in combination with each other would result in any different conclusions. There would be no competent, substantial evidence that [Regions] deviated from what other similarly situated fiduciaries would have done.
“IV. Conclusion
“The [beneficiaries] repeatedly asserted at trial that [Regions] did nothing to protect the Trust from a hurricane loss. While the Trust property was undeniably damaged by Ivan, it does not necessarily follow that [Regions’] did nothing or is at fault. Throughout the trial, [Regions] witnesses testified that there was a fourth method for protecting the assets — namely, good forestry management. Indeed, Mr. Crews testified that he would have relied on the forester’s advice as to the means of protecting the forest. The evidence showed that [Regions] realized more than $3.5 million in salvage recoveries after [Hurricane] Ivan — more than 80% of the damaged trees, which Mr. Heath testified was *218 substantially above the average. This served to reduce the losses, just as the [beneficiaries’] proposed options might have reduced, not necessarily eliminated, the losses.
“The risk of severe hurricane damage to the Lowrey Trust property was less than 1%, and in fact Dr. [Wayne] Williams indicated that reliable historical records reflected no hurricane of Ivan’s intensity crossing through Monroe and Conecuh Counties prior to 2004. Evaluation of [Regions’] management must be made in light of the facts known prior to Ivan. See Ala.Code [1975,] § 19-3-120.2.
“In consideration of the foregoing, it is hereby ordered, adjudged, and decreed as follows:
“1. Judgment is hereby entered in favor of Defendant Regions Bank/Regions Financial Corporation and against [the beneficiaries] on all claims asserted in the Complaint, as amended.
“2. Costs are hereby taxed to [the beneficiaries].”
(Footnotes omitted.)
Regions filed a bill of costs on March 21, 2011, and a supplemental bill of costs on March 22, 2011, requesting $49,120.98 in costs, detailing all the expenses incurred in defending the claim, and attaching supporting documentation. The beneficiaries filed a motion to review taxation of costs and a motion to vacate the judgment. The trial court did not rule on the motions, and all post-trial motions were deemed denied by operation of law. Regions timely appealed, and the beneficiaries filed a cross-appeal.
II. Standard of Review
“The evidence in this case was presented to the trial judge in a bench trial. ‘“When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” ’ Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)); see also First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987). As this Court has stated,
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
“Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.’ Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).”
*219 Robinson v. Evans, 959 So.2d 634, 637 (Ala.2006).
A trustee’s first duty as a fiduciary is to act in all things wholly for the benefit of the trust. See, e.g., First Alabama Bank of Montgomery, N. A. v. Martin, 425 So.2d 415 (Ala.1982); Birmingham Trust Nat’l Bank v. Henley, 371 So.2d 883 (Ala.1979). A trustee owes the beneficiaries of a trust the duty of loyalty, which requires the trustee to preserve trust assets and to administer the trust solely in the interest of the beneficiaries. Id. A trustee is under a duty to the beneficiaries to “ ‘exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property.’ ” First Alabama Bank of Huntsville, N.A. v. Spragins, 515 So.2d 962, 964 (Ala.1987)(quoting Restatement (Second) of Trusts § 174 (1959)); Jones v. Ellis, 551 So.2d 396, 402 (1989). See § 19-3-120.2(a), Ala.Code 1975 (setting out the standards for fiduciary investment and management of trusts).[2]
“[T]he trial judge is in the better position to judge the credibility of the witnesses and the sufficiency of the evidence. This Court will not disturb the decision of the trial court, sitting without a jury, on conflicting evidence that is partly ore tenus, unless it is contrary to the great weight of the evidence. United States Fidelity & Guar. Co. v. Armstrong, 479 So.2d 1164 (Ala.1985); Owen v. Rutledge, 475 So.2d 826 (Ala.1985); Burroughs v. Great Atlantic & Pacific Tea Co., 462 So.2d 353 (Ala.1984); First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415 (Ala.1982), cert. denied, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983); Sams v. Byars, 207 Ala. 504, 93 So. 415 (1922).”
American States Ins. Co. v. Copeland, 534 So.2d 275, 278 (Ala.1988).
III. Analysis
A. Cross-Appeal of Breach-of-Fiduciary-Duty Claim
On cross-appeal in case no. 1110044, the beneficiaries contend that the evidence was not sufficient to support the trial court’s conclusion that Regions did not breach its fiduciary duty in the management of the assets of the Lowrey Trust. We disagree.
The beneficiaries allege that Regions, the sole trustee, breached its fiduciary duties in several respects. The elements of such a claim are as follows: (1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach. See Hensley v. Poole, 910 So.2d 96, 106 (Ala.2005); Martin, supra. Because Regions served as sole trustee of the Lowrey Trust, a fiduciary duty existed between the parties. The beneficiaries, however, failed to show that Regions breached that fiduciary duty.
The trial court issued a detailed order that included findings of fact. The trial *220 court found that a similarly situated trustee would not have purchased, or even considered purchasing, standing-timber insurance before Hurricane Ivan. The trial court also found that Regions acted in good faith and with reasonable prudence in determining that it was in the best interest of the Lowrey Trust and in furtherance of the goals set out in Mr. Lowrey’s will to retain the Lowrey Trust timberlands. The trial court further found that a similarly situated trustee would not have implemented an aggressive clear-cutting plan for the timber. The beneficiaries failed to present evidence indicating that Regions, the sole trustee, breached its fiduciary duty. Accordingly, we affirm the trial court’s judgment on the beneficiaries’ claim of breach of fiduciary duty.
B. Attorney Fees and Costs
On appeal in case no. 1101541, Regions contends that the trial court erred in summarily denying its motion for attorney fees. Regions also contends that, although the trial court properly taxed costs against the beneficiaries, it erred in failing to overrule the beneficiaries’ objection to Regions’ itemization of costs because, it says, the beneficiaries failed to present contradictory sworn evidence to refute Regions’ position that its costs were reasonable and necessary to the defense of this matter. We consider these in turn.
In Alabama, attorney fees are to be awarded only if they are provided for by statute, contract, or special equity. Hart v. Jackson, 607 So.2d 161, 163-64 (Ala.1992). Reimbursement for expenses, including attorney fees, incurred by a trustee in defending an action is allowed pursuant to § 19-3B-709, Ala.Code.1975, provided that the trustee has not committed a material breach of the trust. Additionally, §§ 19-3B-816(a)(24) and (28), Ala.Code 1975, provide that a trustee may:
“(24) prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee’s duties and to employ counsel, expert witnesses, or other agents;
[[Image here]]
“(28) employ and compensate persons deemed by the trustee needful to advise or assist in the proper management and administration of the trust, including, but not limited to, agents, auditors, including public accountants, certified public accountants or internal auditors, brokers, attorneys-at-law, attorneys-in-fact, investment bankers, investment advis-ors, rental agents, realtors, appraisers, and tax specialists, including any related party, so long as the relationship and the fees charged are reasonable and disclosed in any reasonable manner to the current beneficiaries; and to do so without liability for any neglect, omission, misconduct, or default of the agent or representative, provided the trustee acted as a prudent person in selecting and monitoring the agent or representative. For purposes of the immediately preceding sentence, compensation charged by or paid to an affiliated business entity shall be presumed to be reasonable if the compensation is consistent with the published fee schedule maintained by the affiliated business entity in the ordinary course of business.... ”
Furthermore, when a trustee defends itself against attacks concerning the management of trust assets, the trustee is entitled to recover its litigation expenses, including attorney fees, from the trust. See, e.g., Farlow v. Adams, 474 So.2d 53, 59 (Ala.1985).
Based on the foregoing, we conclude that Regions was entitled to an award of attorney fees; therefore, the trial court erred in denying Regions’ motion for attorney fees. Thus, we reverse the trial court’s order denying Regions’ motion for *221 attorney fees, and we remand the cause for the trial court to hold the requested evidentiary hearing on that attorney-fee motion. See, e.g., Kiker v. Probate Court of Mobile Cnty., 67 So.3d 865 (Ala.2010), and the cases cited therein.
Turning to the taxation of costs, Rule 54(d), Ala. R. Civ. P., provides for the taxation of costs. Generally, “‘[t]he assessment of costs is merely incidental to the [final] judgment....'" Ford v. Jefferson Cnty., 989 So.2d 542, 545 (Ala.Civ.App.2008) (quoting Littleton v. Gold Kist, Inc., 480 So.2d 1236, 1238 (Ala.Civ.App.1985)). Because the trial court taxed costs but failed to consider the submissions of the parties in doing so, we remand this case for the trial court to conduct a hearing on what is properly taxed as a cost of litigation.
IV. Conclusion
Upon review of the record of the five-day bench trial and the considerable documentary evidence, we hold that there was substantial evidence to support the trial court’s decision on the beneficiaries’ breach-of-fiduciary-duty claim. Thus, we affirm the trial court’s judgment in favor of Regions on that claim. We reverse the trial court’s ruling on Regions’ motion for attorney fees, and we remand this cause for the trial court to hold a hearing on Regions’ attorney-fee motion to consider the reasonableness of the attorney fee. On remand, the trial should also determine what costs are to be properly taxed.
1101541 — REVERSED AND REMANDED.
1110044 — AFFIRMED.
MALONE, C.J., and WOODALL, BOLIN, and PARKER, JJ., concur.

. Regions became the sole trustee of the Low-rey Trust in 2006 when it merged with Am-South Bank. AlaTrast, Inc., was named successor trustee effective August 3, 2010.

. Section 19-3-120.2 applies to this case because the underlying event giving rise to the action, the damage caused by Hurricane Ivan, occurred in September 2004, before the Alabama Uniform Trust Code became effective on January 1, 2007. See § 19-3B-101 et seq., Ala.Code 1975 (“the Alabama Uniform Trust Code”). The Alabama Uniform Trust Code "applies to all trusts created before, on, or after January 1, 2007,” and “to all judicial proceedings concerning trusts commenced on or after January 1, 2007.” Section 19-3B-1204(a)(1) and (2), Ala.Code 1975. This action was commenced in December 2007, so the Alabama Uniform Trust Code applies as well. Regardless, the Alabama Uniform Trust Code and the law in effect at the time of Hurricane Ivan are not substantially different in regard to fiduciary management and diversification. Cf. § 19-3-120.2(a), Ala.Code 1975 (fiduciary investment and management) and § 19-3B-804, Ala.Code 1975 (prudent administration), and § 19-3B-903, Ala.Code 1975 (diversification).