PARKER, Justice.
Regions Bank (“Regions”), as sole trustee of the J.F.B. Lowrey Trust (“the Low-rey Trust”), appeals the order of the Monroe Circuit Court (“the trial court”) awarding Regions $312,257.36 from the Lowrey Trust as reimbursement for attorney fees and expenses Regions incurred as trustee during the successful defense of an action brought against Regions by two of the beneficiaries of the Lowrey Trust— Sam G. Lowrey, Jr., and. Shelby Jones (“the beneficiaries”).[1]

Facts and Procedural History

This is the second time this matter has come before this Court. In Regions Bank v. Lowrey, 101 So.3d 210 (Ala.2012), we set forth the relevant facts and procedural history concerning the underlying action:
“On December 11, 2007, the beneficiaries sued Regions, alleging breach of fiduciary duty. The beneficiaries claimed that Regions failed to protect and preserve the assets of the Lowrey Trust, which consisted primarily of approximately 20,000 acres of timberland located in Monroe and Conecuh Counties and which have been the subject of much intra-family litigation as the trial *103 judge set out in its order and judgment as follows:
“ ‘II. Prior Litigation and Court Order History
“‘There has been considerable in-tra-family litigation over the years pertaining to the Lowrey Trust, and this [cjourt has issued several orders that have a direct bearing on the issues in this case. The first pertinent order was the Consent Decree (the “1990 Order”) dated July 6, 1990, entered in “H. Lowrey McNeil, et al., v. Samuel Graves Lowrey. et al.,” Case No. CV-88-114.... The more significant provisions of this order are as follows:
“‘ — AmSouth Bank was appointed as co-trustee along with Sam Low-rey, Sr.
“ ‘ — The two trustees were required to select an independent, neutral professional forestry consultant whose primary task was to recommend a timber management plan to the trustees.
“ ‘ — The timber management plan was to “balance the interest of the successive income beneficiaries of the [Lowrey] Trust and the remainder interest.” The plan was not to endanger “the safety of the principal in order to produce a large income” or sacrifice “income for the purpose of increasing the value of the principal.”
“ ‘ — Distributable income from the Lowrey Trust was to be based on the annual growth of the forest, and the timber management plan was to provide for cutting “at least 87% of the average annual growth of the forest during each five-year period, but not less than 75% of the annual growth in any single year.”
“ ‘ — The timber management plan was to be periodically reviewed and updated.
“‘In response to this Order, Mr. Lowrey and AmSouth Bank selected Pomeroy & McGowin as the independent forestry consultant, and Pomeroy submitted a timber management plan. This plan was in effect for 10 years into 2000 and called for a thinning of mature natural pine stands rather than an aggressive clear-cutting plan. It is undisputed' that the selection of Pomeroy & McGowin was appropriate. No one contends that the Pom-eroy plan was inconsistent with the 1990 Order, and the [beneficiaries] stipulated during the trial that they had no complaint concerning this plan or the manner in which the Bank had implemented it.
“ ‘Further court proceedings occurred in 1993. These proceedings ultimately resulted in an Order and Judgment dated July 21, 1993 (the “1993 Order”).... This Order made AmSouth Bank the sole trustee of the Lowrey Trust and vested the Bank with additional powers and authorities beyond those specified in the Will. Included among these additional powers and authorities were the following:
“ ‘ “c. To hold and retain without liability for loss or depreciation any real or personal property ... without regard to any statutory or constitutional limitations applicable to the investment of funds and though the retention might violate principles of investment diversification, so long as the trustee shall consider the retention for the best interests of the trust.
“ ‘ “d. To sell at public or private sale ... or otherwise dispose of all or any portion of the trust in such *104 manner and upon such terms and conditions as the trustee may approve.”
“‘1993 Order, paragraph 3. As acknowledged by the Bank’s witnesses, this language from the 1993 Order did not require the Bank to retain the timberland; however, it authorized the Bank to either retain or sell the timberland as it thought best, without concern over specific investment rules or principles of diversification.’
“On September 16, 2004, Hurricane Ivan made landfall and moved over Monroe and Conecuh Counties, causing severe wind damage and destruction of much of the standing timber owned by the Lowrey Trust. In their complaint, the beneficiaries averred that Regions failed to discharge its duty to protect and preserve the assets of the Lowrey Trust and claimed losses amounting to approximately $13,000,000. Specifically, the beneficiaries asserted that Regions should have purchased casualty-loss insurance on the timber, should have sold most of the timberland before Hurricane Ivan in order to diversify the investments of the trust estate, should have cut the timber more rapidly, or should have pursued some combination of these tactics in order to preserve the corpus of the Lowrey Trust.
“From June 28, 2010, through July 2, 2010, the trial court conducted a 5-day bench trial, at which ore tenus evidence was received and 12 witnesses testified. On August 2, 2010, as trustee of the Lowrey Trust, Regions filed a motion to award attorney fees and costs and requested an evidentiary hearing on its motion. Regions also moved for the joinder of AlaTrust, Inc., which was named the successor trustee of the Low-rey Trust on August 3, 2010. The trial court scheduled several evidentiary hearings, but continued those dates. On March 9, 2011, without conducting an evidentiary hearing on Regions’ motion, the trial court issued an order denying Regions’ motion to award attorney fees and reserved ruling on an award of costs.
“The following day, on March 10, 2011, the trial court entered a detailed order in favor of Regions, rejecting the beneficiaries’ claims of mismanagement of the trust assets and taxing costs against the beneficiaries.”
101 So.3d at 212-13. Regions appealed the trial court’s denial of its motion for reimbursement of attorney fees, and the beneficiaries cross-appealed the trial court’s judgment on their breach-of-fiduciary-duty claim.
On appeal, this Court affirmed the trial court’s judgment in favor of Regions on the beneficiaries’ breach-of-fiduciary-duty claim. Regions Bank, 101 So.3d at 221. However, this Court reversed the trial court’s ruling on Regions’ motion for reimbursement of attorney fees, stating as follows:
“On appeal ... Regions contends that the trial court erred in summarily denying its motion for attorney fees....
“In Alabama, attorney fees are to be awarded only if they are provided for by statute, contract, or special equity. Hart v. Jackson, 607 So.2d 161, 163-64 (Ala.1992). Reimbursement for expenses, including attorney fees, incurred by a trustee in defending an action is allowed pursuant to § 19-3B-709, Ala. Code 1975,[2] provided that the trustee *105 has not committed a material breach of the trust. Additionally, §§ 19-3B-816(a)(24) and (28), Ala.Code 1975, provide that a trustee may:
“ ‘(24) prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee’s duties and to employ counsel, expert witnesses, or other agents;
[[Image here]]
“ ‘(28) employ and compensate persons deemed by the trustee needful to advise or assist in the proper management and administration of the trust, including, but not limited to, agents, auditors, including public accountants, certified public accountants or internal auditors, brokers, attorneys-at-law, attorneys-in-fact, investment bankers, investment advisors, rental agents, realtors, appraisers, and tax specialists, including any related party, so long as the relationship and the fees charged are reasonable and disclosed in any reasonable manner to the current beneficiaries; and to do so without liability for any neglect, omission, misconduct, or default of the agent or representative, provided the trustee acted as a prudent person in selecting and monitoring the agent or representative. For purposes of the immediately preceding sentence, compensation charged by or paid to an affiliated business entity shall be presumed to be reasonable if the compensation is consistent with the published fee schedule maintained by the affiliated business entity in the ordinary course of business.’
“Furthermore, when a trustee defends itself against attacks concerning the management of trust assets, the trustee is entitled to recover its litigation expenses, including attorney fees, from the trust. See, e.g., Farlow v. Adams, 474 So.2d 53, 59 (Ala.1985).
“Based on the foregoing, we conclude that Regions was entitled to an award of attorney fees; therefore, the trial court erred in denying Regions’ motion for attorney fees. Thus, we reverse the trial court’s order denying Regions’ motion for attorney fees, and we remand the cause for the trial court to hold the requested evidentiary hearing on that attorney-fee motion. See, e.g., Kiker v. Probate Court of Mobile Cnty., 67 So.3d 865 (Ala.2010), and the cases cited therein.”
101 So.3d at 220-21. This Court also instructed the trial court to determine the taxation of costs. 101 So.3d at 221.
On remand, Regions filed with the trial court a supplemental brief in support of its original “motion to award and/or allow reimbursement of attorneys’ fees.” In its supplemental brief, Regions requested reimbursement in the amount of $642,547.57 for legal fees and $148,0^2.55 for expenses, as well as interest in the amount of $139,186.05.
AlaTrust, Inc., as the current trustee of the Lowrey Trust, filed a response on November 27, 2012, in which it argued that *106 the amount of attorney fees paid by Regions was unreasonable and that, therefore, Regions was not entitled to be reimbursed for the total amount. AlaTrust argued that the trial court should reduce Regions’ requested amount by a line-byline reduction of $363,795 for attorney fees that AlaTrust argued were not properly reimbursable. In the alternative, AlaTrust argued that Regions’ requested reimbursement should be reduced by $279,137.61 ($210,000 in fees for defense of beneficiaries’ claims plus $69,137.61 in fees and expenses for seeking reimbursement) — a figure AlaTrust alleged was a 27% reduction of the attorney fees Regions incurred while defending itself from the beneficiaries’ claims, plus the amount of attorney fees Regions incurred while litigating its reimbursement claim.[3] In addition to those reductions, AlaTrust also argued that Regions’ request for interest should be denied in its entirety.
On November 28, 2012, the trial court conducted an evidentiary hearing on Regions’ motion for reimbursement as instructed by this Court. At the hearing, Regions’ lead attorney, Edward Dean, testified as to the accuracy of the invoices and the necessity of the time expended and the expenses incurred while successfully defending Regions from the beneficiaries’ claims. In lieu of further testimony, the parties stipulated to the submission of three affidavits. The first affidavit was from Dean, which explained his litigation strategy, the hours of work expended by him and others in his firm, Armbrecht Jackson, LLP, and the hourly rates at which his firm charged Regions.
The second affidavit was from Carroll Blow, a senior vice president at Regions and head of the trust department in Regions’ Mobile office. Blow stated' that he had reviewed the invoices from Armbrecht Jackson and that either he or another authorized Regions employee had approved payment on the invoices submitted by Armbrecht Jackson. Blow also stated that it was his opinion that the fees and expenses stated in the invoices were reasonable and that Regions acted in good faith when it authorized payment for the full amount of the invoices. Blow also stated that reasonable interest on Regions’ advancement of payments to Armbrecht Jackson was $139,186.05 as of November 28, 2012, an amount calculated at an interest rate of 6%.
The third affidavit, submitted by Ala-Trust, was from Joseph Fawal, a disinterested attorney located in Birmingham who has practiced law for 35 years and who has been involved in extensive trust litigation. Fawal stated that, after reviewing Arm-brecht Jackson’s invoices and discussing the case with the beneficiaries’ attorney, David Rayfield, it was his opinion that the charges submitted by Armbrecht Jackson revealed unreasonable and excessive time and costs. Fawal also stated that in cases involving voluminous invoices, such as this one, it would be consistent with accepted billing practices to conduct a percentage reduction of the total amount of the invoices to offset the unreasonable and ex *107 cessive charges in lieu of a line-by-line analysis of the invoices. Based on his review of the invoices, Fawal stated that it was his opinion that Regions’ requested reimbursement should be reduced by a total of $220,000.
On December 18, 2012, AlaTrust filed a supplemental brief in which AlaTrust stated that it had miscalculated the recommended percentage reduction contained in its November 27, 2012, brief, which Ala-Trust had calculated based upon Fawal’s recommended reduction of $220,000. Ala-Trust argued that if the trial court were to apply a percentage reduction, then a 34.2% reduction should be applied to the requested attorney fees and expenses. AlaTrust concluded its supplemental brief by requesting that the trial court either reduce Regions’ requested reimbursement by a line-by-line reduction of the invoices, which would result in a reduction of $363,795 for attorney fees and $43,286.51[4] for costs, or, in the alternative, reduce Regions’ requested reimbursement by a percentage reduction totaling $289,137.61 ($220,000 in fees for defense of beneficiaries’ claims plus $69,137.61 in fees and expenses for seeking reimbursement) for attorney fees and $50,623.71 for costs. AlaTrust also argued that interest should not be awarded in either case.
On January 8, 2013, the trial court issued the following order:
“1. The court finds that $191,869.86 in fees and expenses related to contact by counsel with twenty-seven (27) experts who were neither identified in this litigation nor called to offer any opinion shall not be taxed and the court hereby reduces the requested reimbursement of fees and costs by that amount.
“2. The court finds that $29,236.56 in fees and expenses incurred regarding Charles Tarver[5] was not a proper item for taxation as he was not called to testify. The requested reimbursement of fees and costs is reduced by that amount.
“3. The court finds that the time and expense associated with the counterclaim [6] by Regions and the defense of the [beneficiaries’] motion to compel are not properly taxable. The requested reimbursement of fees and costs is accordingly reduced by $67,814.33.
“4. The court finds that the fees and expenses incurred in seeking reimbursement for attorneys fees and costs is not taxable in this case and the court hereby reduces the requested reimbursement of fees and costs by $69,137.61.
“5. The court also finds that fees and expenses incurred on miscellaneous matters, such as billing for summer clerks, the attendance at a conference on Hurricane Katrina and Ivan by an associate, research on an article involving the Red-Cockaded Woodpecker, and work related to the transfer of trust assets to AlaTrust were not properly taxable in this case. The requested reimbursement of fees and costs is accordingly reduced by $4,296.00.
“6. The total of each of the above categories of work which the court finds is not proper as a taxable expense in this case as set forth in paragraphs 1-5 is $362,354.36.
“7. The court also finds that interest is not warranted in this matter. Even if *108 interest were warranted, there is no competent evidence before the court that the requested interest rate is reasonable. The request for $189,186.05 in interest is hereby denied.
“8. The court finds that the testimony of the only expert providing any testimony regarding the reasonableness of the fees and costs, attorney Joseph Fa-wal, concerning the balance of the requested reimbursement of fees and costs must be considered under the method of proof allowed under Alabama law and accordingly, the requested reimbursement is hereby reduced by an additional 27%, or $115,618.26.
“9. The court further finds that the costs of witness fees ($20.59) and the deposition of Ed Wilson ($319.55) which was used at trial, are properly taxed against the [Lowrey] Trust. Because these expenses are also included in the expenses sought in Regions’ ‘motion to award and/or allow reimbursement of attorneys fees,’ they are also deducted from the claimed amount.
“Therefore it is ORDERED and DECREED that Regions is entitled to reimbursement of fees and expenses and costs arising out of the above-styled litigation in the amount of $812,257.36 and that costs be taxed against the [Lowrey] Trust in the amount of $340.14.”
(Capitalization in original.)
On February 7, 2013, Regions filed a motion for a new trial and a motion to alter, amend, or vacate the trial court’s January 8, 2013, order. On May 8, 2013, Regions’ motions were denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. Regions appealed.

Standard of Review

“ ‘The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).
“ ‘This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
“ ‘ “[ (1) ] [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.”
“ ‘Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala.2004), citing Graddick v. First Farmers & Merchants Nat’l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).
“‘We defer to the trial court in an attorney-fee case because we recognize that the trial court, which has presided over the entire litigation, has a superior *109 understanding of the factual questions that must be resolved in an attorney-fee determination. Horn, 810 So.2d at 681-82, citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, a trial court’s order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee. Horn, 810 So.2d at 682, citing American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933.’ ”
Kiker v. Probate Court of Mobile Cnty., 67 So.3d 865, 867-68 (Ala.2010) (quoting Pharmacia Carp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004)).

Discussion

As set forth above, § 19-3B-709(a), Ala.Code 1975, provides for the reimbursement of a trustee for certain expenses incurred in the course of administering a trust:
“A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate for:
“(1) expenses that were properly incurred in the administration of the trust, including the defense or prosecution of any action, whether successful or not, unless the trustee is determined to have willfully or wantonly committed a material breach of the trust....”
Additionally, §§ 19-3B-816(a)(24) and (28), Ala.Code 1975, provide that a trustee may:
“(24) prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee’s duties and to employ counsel, expert witnesses, or other agents;
[[Image here]]
“(28) employ and compensate persons deemed by the trustee needful to advise or assist in the proper management and administration of the trust, including, but not limited to, ... attorneys-at-law, ... so long as the relationship and the fees charged are reasonable and disclosed in any reasonable manner to the current beneficiaries....”
Pursuant to the statutes set forth above,[7] this Court, on its first consideration of this case, held that Regions was entitled to reimbursement from the Lowrey Trust for the attorney fees and expenses that it reasonably had incurred during its successful defense of the beneficiaries’ claims, and we remanded this case to the trial court to conduct an evidentiary hearing to determine the amount of those fees and expenses in light of the criteria set forth in Kiker and the cases cited therein.[8] See *110 Regions Bank, 101 So.3d at 221. The trial court conducted an evidentiary hearing as instructed on November 28, 2012, and issued an order on January 8, 2013, determining that Regions was not entitled to be reimbursed for specific categories of attorney fees and expenses totaling $362,354.36 of the approximately $790,000 expended by Regions in its defense. The trial court also denied Regions’ request for interest in the amount of $139,186.05. In addition, the trial court reduced the remaining amount of Regions’ reimbursement request by 27%, or $115,618.26. After making these reductions, the trial court awarded Regions $312,257.36 for attorney fees and expenses. The trial court also taxed costs against the Lowrey Trust for witness fees and deposition costs amounting to $340.14.
The trial court’s January 8, 2013, order, however, is not supported by the evidence. During the hearing, Regions presented the testimony of Dean as well as the affidavits by Dean and Blow, which supported Regions’ arguments that the amount it had paid for its successful defense against the beneficiaries’ claims was reasonable and that a reasonable interest rate on the money advanced for its defense would be 6%. The only evidence presented by AlaTrust at the hearing was Fawal’s affidavit, in which he recommended that Regions’ requested reimbursement for attorney fees be reduced by $220,000 — approximately 27% of Regions’ requested reimbursement for attorney fees and expenses. AlaTrust consistently argued that the trial court should either conduct a line-by-line review of Armbrecht Jackson’s invoices and make specific reductions or reduce the amount of the attorney fees and expenses requested by Regions by a percentage method. Rather than applying either method to reduce Regions’ requested reimbursement, the trial court reduced Regions’ requested reimbursement by both a line-by-line reduction and a percentage reduction for a total reduction of $477,972.62. The trial court’s reduction of Regions’ reimbursement is not supported by the evidence in that the reduction grossly exceeds the recommended reduction of AlaTrust’s own expert witness.
The trial court’s categorical denial of specific types of fees is also problematic. The trial court disallowed $191,869.86 “in fees and expenses related to contact by counsel with twenty-seven (27) experts who were neither identified in this litigation nor called to offer any opinion” and $29,236.56 “in fees and expenses incurred regarding Charles Tarver ... [because] he was not called to testify.” Regions contests the accuracy of the trial court’s statement regarding the 27 individuals the court identifies as “experts.” Even if the trial court’s characterization were correct, however, the basis for denying Regions’ request for reimbursement for those fees and expenses is not in keeping with the norms of litigation preparation and practice.
Regions successfully defended itself from the beneficiaries’ $13,000,000 action against it. Had it failed, Regions would not have been entitled to any reim *111 bursement. See Regions, 101 So.Sd at 220 (“Reimbursement for expenses, including attorney fees, incurred by a trustee in defending an action is allowed pursuant to § 19-3B-709, Ala.Code 1975, provided that the trustee has not committed a material breach of the trust.”). In ascertaining whether Regions’ expenditures on its defense were reasonable, the trial court must be mindful of the exposure Regions faced as it was conducting its defense. The trial court’s disallowance of reimbursement for specific activities simply because the activities did not result in the production of evidence that was ultimately presented during the trial does not address whether a reasonable and zealous advocate would have conducted those activities in search of relevant evidence. Additionally, while functioning as defense counsel, an attorney must be prepared to adequately respond to any piece of evidence a plaintiff might present during a trial but must present only evidence necessary to rebut the plaintiffs case. Accordingly, the reasonableness of an attorney’s preparation for a case ' cannot be determined solely by whether a specific activity produced evidence that was ultimately presented during a trial. Rather, a specific activity is reasonable if a reasonable attorney might also have done the same thing in the course of representing the client. Therefore, when a court conducts a line-by-line examination of a trustee’s attorney-fee-reimbursement request, as the trial court in the present case did in making the deductions found in paragraphs 1-3 and 5 of its order, it must order reimbursement for those attorney fees and expenses that are reasonable under the standard set forth above.
The trial court also improperly denied Regions’ request for reimbursement for fees and expenses incurred while seeking reimbursement (paragraph 4 of its order). In Farlow v. Adams, 474 So.2d 53, 59 (1985), this Court set forth the following rationale for reimbursing a trustee for a successful defense of its administration of a trust:
“The issue of whether defending against an unsuccessful attempt to remove a trustee is considered a personal benefit to the trustee and not a common benefit of the trust was addressed in Weidlich v. Comley, 267 F.2d 133 (2d Cir.1959). There, Judge Learned Hand held:
“ ‘Coming then to the merits of the dispute, the plaintiffs first complaint is the allowance to the defendant out of the trust assets of his expenses in defending himself in the action. The argument is that these expenses were incurred in the defendant’s individual interest, and may not be charged against the trust. That completely misses the true situation: a trustee was appointed to administer the assets; the settlor selected him to do so, and whatever interferes with his discharge of his duty pro tanto defeats the settlor’s purpose. When the trustee’s administration of the assets is unjustifiedly assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor’s purpose. To compel him to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled and which was a part of the inducement to his acceptance of the burden of his duties. This has been uniformly the ruling, so far as we have found. Jessup v. Smith, 223 N.Y. 203, 207, 119 N.E. 403 [ (1918) ]; Matter of Bishop’s Will, 277 App. Div. 108, 98 N.Y.S.2d 69, 301 N.Y. 498, 95 N.E.2d 817 [ (1950]); Gordon v. Guernsey, 316 Mass. 106, 55 N.E.2d 27 [ (1944) ]; Scott on Trusts, § 188.4.’
“267 F.2d at 134.”
*112 We similarly conclude that denying a trustee reimbursement for expenses incurred while pursuing reimbursement for the successful defense of the claims against it would “diminish the compensation to which [it] is entitled and which was a part of the inducement to [its] acceptance of the burden of [its] duties.” Farlow, 474 So.2d at 59. Accordingly, Regions is entitled to be reimbursed for the cost of litigating its right to reimbursement.
Additionally, the trial court improperly denied Regions’ request for interest on the amount of its reimbursement. In this Court’s first consideration of this case, it held that Regions was entitled to reimbursement under § 19-3B-709, Ala.Code 1975, which states that “[a] trustee is entitled to be reimbursed out of the trust property, with interest as appropriate.” In addition to this statutory right, the terms of the Lowrey Trust, pursuant to the trial court’s July 21, 1993, order, gave Regions the power “[t]o advance money to or for the benefit of any trust for any purpose of the trust” and provided for Regions to “be reimbursed for the money so advanced with reasonable interest thereon from the trust or from any funds belonging thereto.” As stated above, this Court held in Farlow that “ ‘[w]hen the trustee’s administration of the assets is unjustifiably assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor’s purpose.’ ” 474 So.2d at 59 (quoting Weidlich v. Comley, 267 F.2d 133, 134 (2d Cir.1959)). Under Farlow, Regions, in advancing money in its successful defense against the beneficiaries’ claims,* was realizing the settlor’s purpose and, therefore, was advancing money for the benefit of the Lowrey Trust. Accordingly, Regions is entitled to reasonable interest on the amount it reasonably advanced for its defense.

Conclusion

Regions is entitled to be reimbursed for the attorney fees it incurred for activities a reasonable attorney might have conducted in the course of zealously defending Regions from the beneficiaries’ claims. The trial court exceeded its discretion by reducing Regions’ reimbursement by both a line-by-line reduction and a percentage reduction. Therefore, we reverse the trial court’s January 8, 2013, order in its entirety and remand this case to the trial court to reconsider the reasonableness of each aspect of Regions’ reimbursement request and to instruct AlaTrust, as trustee of the Lowrey Trust, to reimburse Regions accordingly.
REVERSED AND REMANDED.
STUART, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
MOORE, C.J., and BOLIN, J., concur in the result.

. Regions became the sole trustee of the Low-rey Trust in 2006 when it merged with Am-South Bank. AlaTrust, Inc., was named successor trustee effective August 3, 2010.

2. Section 19-3B-709, Ala.Code 1975, provides as follows:
“(a) A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate for:
*105 "(1) expenses that were properly incurred in the administration of the trust, including the defense or prosecution of any action, whether successful or not, unless the trustee is determined to have willfully or wantonly committed a material breach of the trust; and
"(2) to the extent necessary to prevent unjust enrichment of the trust, expenses that were not properly incurred in the administration of the trust.
“(b) An advance by the trustee of money for the protection of the trust gives rise to a lien against trust property to secure reimbursement with reasonable interest.”

. As explained below, in its November 27, 2012, response to Regions’ supplemental brief, AlaTrust recommended that the trial court reduce Regions' reimbursement for attorney fees and expenses by 27% — a figure it based on Joseph Fawal’s affidavit in which he recommended reducing Regions’ attorney fees by $220,000. In a supplemental brief filed on December 18, 2012, AlaTrust stated that it had miscalculated the percentage and that Fawal’s recommended reduction actually amounted to a 34.2% reduction of the requested attorney fees. Therefore, in its supplemental brief, AlaTrust argued that if the trial court were to apply a percentage reduction, the proper reduction would be 34.2% reduction.

. There are no documents in the record to support how AlaTrust calculated this figure.

5. Charles Tarver was retained by Regions as an expert in forestry and timber investment.

6.The “counterclaim” refers to a request for instructions regarding whether Regions should obtain timber insurance for the timberland included in the Lowrey Trust.

. Additionally, Regions, as trustee of the Low-rey Trust, had the power under the terms of the trust, pursuant to the trial court’s order entered on July 21, 1993, ''[t]o appoint, employ, remove and compensate ... attorneys ... as the trustee deems necessary or desirable for the administration of the trust, and to treat as an expense of the trust any compensation so paid." Regions also had the power "[t]o advance money to or for the benefit of” the trust and to “be reimbursed for money so advanced.”

. On remand, Regions argued for the first time that the criteria set forth in Kiker are inapplicable to this case. Rather, Regions argued that its decision to advance its litigation expenses was the exercise of a discretionary power awarded a trustee and is not subject to court review except for an abuse of discretion. However, "[i]t is well established that on remand the issues decided by an appellate court become the law of the case,’ and that the trial court must comply with the appellate court’s mandate. Walker v. Carolina Mills Lumber Co., 441 So.2d 980 (Ala. Civ.App.1983).” Gray v. Reynolds, 553 So.2d *110 79, 81 (Ala. 1989). See also Bagley v. Creekside Motors, Inc., 913 So.2d 441, 445 (Ala. 2005) (" ‘ "Under the doctrine of the 'law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987).' ”). Justice Murdock's separate writing in this case, concurring specially, addresses whether Kiker applies to this case; however, we will consider only whether the trial court properly followed our instructions on remand.