Joseph M. Gordon *vs.* Benjamin Guernsey & others.

Suffolk.   November 2, 1943. — April 29, 1944.

Present: Field, C.J., Lummus, Qua, & Ronan, JJ.

*Trust*, Expense of litigation, Suit for breach of trust. *Attorney at Law. Equity Pleading and Practice*, Appeal.

Certain documents, which the parties to a suit in equity, by a stipulation not approved by the trial judge, agreed might be presented to this court on an appeal without a report of the evidence as a whole, could not be considered by this court; the suit must be decided upon the pleadings and the findings by the trial judge unaffected by such documents.

A trustee charged in litigation with maladministration respecting trust investments, loans and sales, who was completely exonerated on the major charges involved, although held liable on certain unrelated and comparatively minor charges, and who could and did make a reasonable apportionment of counsel fees incurred in his defence as between the two groups of charges and personally paid the fees allocated to defence of the charges on which he was held liable, was entitled to

pay from the funds of the trust the fees allocated to defence of the charges on which he was exonerated.

On findings by a trial judge in a suit in equity, without a report of the evidence, counsel fees of $150,000 charged by eminent attorneys for a largely successful defence of trustees in protracted litigation involving complex and serious charges against them for alleged maladministration to the extent of from $4,000,000 to $6,000,000, could not be ruled by this court to have been excessive contrary to a finding by the trial judge that they were reasonable and proper.

BILL IN EQUITY, filed in the Superior Court on September 19, 1941.

The suit was heard by *Cabot*, J.

*J. B. Abrams*, for the plaintiff.

*H. D. McLellan*, for the defendants Guernsey and others.

*C. F. Lovejoy*, (*J. L. Hall* with him,) for the defendants Coolidge and another.

QUA, J. This bill is prosecuted in behalf of shareholders of Old Colony Trust Associates, an association organized under a declaration of trust dated May 14, 1928, against trustees of the association and the representatives of a deceased trustee to compel the defendants to reimburse the trust for sums expended by them out of assets of the trust for counsel fees and expenses incurred in the defence of a former suit in the Superior Court, entitled Usher *v.* Abbott, brought in behalf of shareholders against the present defendants and others for alleged breaches of trust in the management of this same association. The plaintiff appeals from a decree dismissing the bill.

It may be well to clear up at the outset a seeming misconception as to the record now before us. The printed record contains a copy of a stipulation signed by counsel for the parties, wherein it was agreed, among other things, that the original papers and files of the Superior Court in Usher *v.* Abbott might be used by any party in argument before this court, and that a copy of the master's report in that case, "introduced in evidence as an exhibit by the plaintiff, need not, if the court approves, be printed, but shall be deemed a part of the record and may be presented to the Supreme Judicial Court for the Commonwealth at the time of argument or of submission on briefs." The trial judge did not

approve this stipulation and, so far as appears, never knew of it. The evidence as a whole is not reported. Equity and probate appeals can be brought to this court with a complete report of.the evidence or merely upon the pleadings and the findings of the trial judge, if the appealing party is willing to rely upon the findings without the evidence, and if other parties will not be prejudiced by this course. *Wyness* v. *Crowley,* 292 Mass. 459. *Hubbard* v. *Southbridge National Bank,* 297 Mass. 17, 19. The effect of an agreement of the parties, with the approval of the judge, to include in the record, instead of all the evidence, a summarized statement of all the evidence somewhat analogous to that which might be contained in a bill of exceptions is not here presented. See *Gerrity* v. *Wareham Savings Bank,* 202 Mass. 214, 219; *Thayer* v. *Thayer,* 277 Mass. 256, 258; *Cook* v. *Howe,* 280 Mass. 325, 327. In any event, the parties cannot stipulate for the bringing to this court on an appeal of mere fragments of the evidence, whether documentary or not, with any expectation that they can be used to reverse or to qualify or to add to findings made by the trial judge upon all the evidence. G. L. (Ter. Ed.) c. 214, § 24, c. 215, § 12. *Commonwealth* v. *Suffolk Trust Co.* 161 Mass. 550. *Romanausky* v. *Skutulas,* 258 Mass. 190, 193–194. *Old Colony Trust Co.* v. *Pepper,* 262 Mass. 270, 272. *Yoffa* v. *National Shawmut Bank,* 288 Mass. 422, 426. *Damon* v. *Damon,* 312 Mass. 268, 270. Compare *Gorey* v. *Guarente,* 303 Mass. 569, 570. The documents referred to in the stipulation cannot be considered, and the case must be decided upon the pleadings and the findings of the judge. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 215. *Garsson* v. *American Diesel Engine Corp.* 310 Mass. 618, 619–620.

Important findings of the judge are these: The breaches of trust originally alleged by the plaintiffs in Usher *v.* Abbott were (1) that in 1930 the trustees improperly caused the trust to purchase twenty thousand shares in The First National Bank of Boston at the unwarranted price of $2,360,000, and thereby brought about a loss of $1,860,000; (2) that in 1930–1932 the trustees improperly caused the trust to purchase twenty-three thousand seven hundred

ninety-two of its own shares for $871,266.77; (3) that in 1930 the trustees improperly caused the trust to purchase thirty-eight thousand eleven shares in the Everett Trust Company for $371,473.78; (4) that the trustees improperly caused the trust to lend to the Everett Trust Company about $900,000 and to purchase stock in the Everett Bank and Trust Company for about $335,888; and (5) that the trustees improperly failed to receive from Old Colony Corporation $1.50 a share more than they did receive on sales of one hundred seventy thousand shares of the trust. There were various hearings before the court, and there was a trial before a master, entirely on these issues, lasting sixty-two days. The amount involved, if liability had been found, "might well, with interest, have run to between four and six million dollars." The charges were "of a very serious nature" "because of the bad faith charged to the defendants all of whom were leading and respected business men of Boston." The issues were "of a highly complex nature." The case "required an enormous amount of preparation both as to law and fact." Accountants were properly employed to assist in the preparation. All but one of the trustees engaged for their defence a widely known and respected firm of lawyers which includes "one of the leading trial lawyers of the Commonwealth," whose services are in great demand, and other "eminent and able lawyers of maturity and ability." These members of the firm and their juniors spent on the case a total of ten thousand eight hundred fifty-three hours. The remaining trustee employed a second firm of lawyers to defend him. The defence was wholly successful, and all the trustees were entirely exonerated as to all the charges originally contained in the bill; but on other issues introduced into the case by amendment after the close of the hearings before the master the defendants were found liable in various ways to the extent of about $75,000. These new issues were first suggested by the master himself. They related to the purchase by certain of the defendants in the Usher case of some of the shares of the trust and to the sale "of a comparatively small number of the trust shares to the Old Colony Corporation." As to the nature of the conduct for which the

trustees were held liable the defendants' answers state that the master in the Usher case found that certain shares were originally issued to the trustees themselves at $2 a share less than they should have been issued for, and that certain shares were issued to Old Colony Corporation at $1 a share less than could have been obtained for them. So far as appears these new matters upon which the trustees were found liable had no connection whatever with the subject matter of the original charges which had been the subject of the long hearing before the master and upon which the trustees were exonerated. The judge in the case now before us found that all the services of the accountants were performed before the additional charges were made in the Usher case; that the first firm of attorneys spent ninety-four per cent of their time and the second firm of attorneys ninety per cent of their time upon the issues upon which the defendants prevailed; that the defendants had allocated the attorneys' charges in the same proportion, paying ninety-four and ninety per cent, respectively, out of trust funds and six per cent and ten per cent respectively out of their own funds; that this allocation of the charges pro rata with reference to the matters upon which the trustees were exonerated and those for which they were held liable was reasonable; and that the trustees had acted in good faith in making the payments.

In general, a trustee is entitled to look to the trust fund for the reasonable cost of making a successful defence against charges of maladministration brought against him without fault on his part. *Bogle* v. *Bogle*, 3 Allen, 158, 161. *Forward* v. *Forward*, 6 Allen, 494, 497. *Loring* v. *Wise*, 226 Mass. 231, 234–235. *Andrist* v. *First Trust Co.* 194 Minn. 209. Scott on Trusts, § 188.4, § 244. G. L. (Ter. Ed.) c. 206, § 16. Compare *Urann* v. *Coates*, 117 Mass. 41, 44; *Mealey* v. *Fegan*, 274 Mass. 599; *Comstock* v. *Bowles*, 295 Mass. 250, 263. See *Creed* v. *McAleer*, 275 Mass. 353, 358; *Crowell* v. *Styler*, 314 Mass. 122. It is unnecessary to describe express provisions in the declaration of trust which it is contended are to the same effect. A trustee does not lose this right merely because at some other time he may have become

liable to the beneficiaries for some wholly unrelated conduct as to which he could not properly defend himself at the expense of the trust. See Am. Law Inst. Restatement: Trusts, § 244, comment e. Only a very small proportion of the expenses here in question was caused by any improper conduct of the trustees. According to the findings, that part could be separated from the rest and has been properly separated and paid by the trustees personally. The remainder was rightly paid from the trust fund. *Loring* v. *Wise*, 226 Mass. 231, 234–235. *In re Trust of Butler*, 203 Minn. 555, 562. See *Matter of Ordway*, 196 N. Y. 95. It is immaterial that some of the payments were made before the outcome of the litigation was known, since it now appears that the payments were proper.

The plaintiff further contends that the payments were excessive in amount, particularly the total payment of $150,000 for services to the firm of attorneys first mentioned, who represented all but one of the trustees. But the trial judge has found that all these payments were reasonable and proper, and without the evidence we have no basis on which to say that the findings were wrong. We cannot say, contrary to the judge's finding, that the first mentioned firm did not spend ten thousand eight hundred fifty-three hours on the case. This would seem to amount to the continuous work of about five years, if performed by one lawyer. And if the amount involved was from $4,000,000 to $6,000,000; if the case was as difficult and as complicated as the judge finds it was; if the attorneys were as eminent and their services in as great demand as the judge has found; and if the outcome was "very favorable to the defendants," as the judge says it was, we cannot rule as matter of law that the charge was excessive.

*Decree affirmed with costs.*