PARKER, Justice.
Virginia Ladd appeals from a summary judgment entered against her by the Jefferson Circuit Court (“the circuit court”) in favor of Margaret Stockham, as personal representative of the estate of Herbert Stockham, deceased (“Stockham”) (appeal no. 1140365). Stockham cross-appeals the circuit court’s denial of her motion for reimbursement of costs and attorney fees (appeal no. 1140407).

I. Facts and Procedural History

The following facts are undisputed. Ladd is a beneficiary of three trusts that each held preferred and common stock in SVI Corporation (“SVI”):[1] the Kate F. Stockham Trust, the Herbert C. Stockham Trust, and the Virginia C. Stockham Trust (hereinafter referred to collectively as “the trusts”). Ladd served as an individual cotrustee of the Kate F. Stockham Trust; *459 Herbert Stockham (“Herbert”) served as an individual cotrustee of both the Herbert C. Stockham Trust and the Virginia C. Stockham Trust. At all times relevant to these appeals, one or more predecessors of Wells Fargo Bank, N.A. (“Wells Fargo”), served as the corporate cotrustee of each of the trusts. At all times relevant to these appeals, Herbert served either on the board of directors or as an officer of SVI.[2]
In 1997, SVI’s board of directors, on which Herbert then served, agreed to sell nearly all of SVI’s assets to Crane Co. (“Crane”) for $60 million. The one asset Crane did not want to purchase was SVI’s Birmingham plant and foundry facility because of potential environmental-contamination concerns. As a condition to the proposed sale, SVI agreed to manufacture an order of valves for Crane to be completed by May 1998. Before the sale between SVI and Crane could become final, SVI’s shareholders had to pass a resolution approving of the sale of substantially all of SVI’s assets. Accordingly, SVI’s board of directors notified SVI’s shareholders that a meeting to consider such a resolution would be held on December 1,1997.
On December 1, 1997, SVI’s board of directors held a meeting for SVI’s shareholders to consider the resolution to sell substantially all of SVI’s assets to Crane. Ladd attended that meeting. At the meeting, SVI’s board of directors thoroughly explained the proposed sale. SVI’s board of directors explained that, should the proposed sale be approved by the shareholders and following the completion of the manufacture of the valves Crane requested, SVI’s board of directors would begin the process of dissolving SVI. An attorney hired by SVI’s board of directors, Jim Hughey, stated at the meeting that proceeds from the proposed sale would allow SVI to redeem SVI’s preferred stock “in full” with “something left over for the common shareholders.” An accountant hired by SVI’s board of directors, Ron Travis, stated at the meeting that SVI would make the “final liquidating distribution” “three years down the road.”
At the conclusion of the December 1, 1997, meeting, SVI’s shareholders voted in favor of authorizing SVI’s board of directors to sell substantially all of SVI’s assets to Crane. Ladd, in her capacity as cotrustee of the Kate F. Stockham Trust, which held SVI stock, was entitled to vote on the sale issue; Ladd voted against the sale. On December 9, 1997, SVI and Crane entered into an agreement for the sale of SVI’s assets.
On April 30, 1998, SVI completed the manufacture of the valves Crane had ordered as part of the sale. Once the manufacturing of the valves was completed, SVI ceased operations and began to wind up its affairs. As part of winding up its affairs, SVI had to remedy the environmental-contamination concerns with its Birmingham facility and dispose of that property. SVI also had to satisfy all outstanding liabilities, which included workers’ compensation obligations, asbestos-exposure lawsuits, and phoduct-liability lawsuits.
SVI continued the winding up of its affairs until 2006, when it filed articles of dissolution. During that time, SVI continued to pay dividends on the preferred shares of SVI stock until September 2004, at which time the payment of dividends was suspended based on SVI’s declining financial position. SVI never redeemed any of its stock as it had promised to do at the December 1, 1997, meeting. Throughout this period, the SVI board of directors *460 informed its shareholders regularly.. of SVI’s declining financial condition. For instance, in November 2004, .SVI’s board of directors informed SVI’s shareholders that the suspension of the payment of dividends begun in September 2004 would remain in effect until SVI’s liquidation. Also, in July 2007 SVI’s board of directors informed SVI’s shareholders that there would probably not be any funds to distribute to SVI’s shareholders after SVI satisfied all of its outstanding obligations.
Herbert resigned as cotrustee of the Virginia C. Stockham Trust on November 18, 2008, and he resigned as cotrustee, qf the Herbert C. Stockham Trust on November 25, 2008.
On July 21, 2010, in an unrelated proceeding, the Herbert C. Stockham Trust, the Kate F. Stockham Trust, and the portion of the Virginia C. Stockham Trust that held SVI stock were terminated by an order of the Jefferson County Probate Court.
On July 21, 2012, Ladd sued Herbert,[3] Wells Fargo, and other individual directors of SVI.[4] Ladd alleged that Herbert had breached his fiduciary duties as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust and'that Wells Fargo had breached its fiduciary duty as cotrustee of the trusts. SpecificaL ly, concerning Ladd’s claim against Herbert, Ladd alleged that Herbert “breached these fiduciary duties by managing SVI in such a way that the value of [the Herbert C. Stockham Trust and the Virginia C. Stockham Trust] was completely destroyed”; Ladd did not allege that Herbert, in his capacity as cotrustee of the Herbert C. Stockham Trust and the Virginia C. Stockham Trust, acted fraudulently. Ladd also asserted shareholder-derivative claims against Herbert and the other individual directors of SVI. Subsequently, Ladd amended her complaint several times. Ultimately, Ladd asserted nine claims against the defendants. The first two of Ladd’s claims — one against Herbert and one against Wells Fargo — were characterized as “direct claims”; the remaining seven claims were characterized as derivative claims against Herbert, Wells Fargo, and the other individual directors of SVI.
On September 26, 2012, the defendants filed a motion to dismiss all of Ladd’s claims' against them. On June 18, 2013, the circuit court denied the defendants’ motion to dismiss. The defendants were ordered to file answers to Ladd’s complaint, which they did.
On March 7, 2014, having conducted some discovery, Stockham and the individual directors of SVI filed a motion to dismiss as untimely all of Ladd’s derivative claims asserted against them in their capacities as former directors of SVI. On May 8, 2014, the circuit court granted the motion and dismissed all the derivative claims against Stockham and the individual directors of SVI; this order adjudicated all of Ladd’s claims against the individual directors of SVI, leaving Stockham, Wells Fargo, and SVI as remaining defendants. On May 28, 2014, the circuit court certified its May 8, 2014, order as final pursuant to Rule 54(b), Ala. R. Civ. P. Ladd did not appeál the May 8, 2014, order dismissing her derivative claims against Stockham and the individual directors of SVI.
After further discovery, Ladd, Stock-ham, and Wells Fargo filed motions for a summary judgment on Ladd’s remaining claims. In her summary-judgment mo *461 tion, Ladd argued that Herbert would have had knowledge of SVTs financial situation by virtue of his position on the board of directors and that, as cotrustee of the Herbert C. Stockham Trust and the Virginia C. Stockham Trust, he breached his fiduciary duty to Ladd by failing to inform Ladd of SVTs financial situation and “by failing to take any action or demand that SVI redeem the preferred shares [of SVI stock held by the trusts] as [SVI] said it would at the time it said it would.” Stock-ham and Wells Fargo argued in their joint motion for a summary judgment that Ladd’s claims were barred by the applicable statute of limitations and by the doctrine of laches. In addition to their joint motion, Stockham and Wells Fargo also filed individual motions for a summary judgment related to the claims asserted against them.
On September 18, 2014, the circuit court entered a summary judgment in favor of Stockham and against Ladd, which is the subject of Ladd’s appeal.[5] In entering a summary judgment for Stockham, the circuit court set forth the following facts:
“Count I of Ladd’s Complaint asserts a claim for breach of fiduciary duty against [Herbert] in his capacity as an individual co-trustee of the Herbert C. Stockham Trust and the Virginia C. Stockham Trust (‘the Trusts’ or the ‘Ladd Trusts’), both of which held preferred and common stock in SVI Corporation beneficially for Ladd and others, Ladd served as the individual co-trustee of a third Trust, the Kate F. Stockham Trust, and was the lifetime income beneficiary, but not the only beneficiary, of each of the Ladd Trusts. At all relevant times, one or more predecessors of Defendant Wells Fargo Bank, N.A., served as the corporate co-trustee. of each of the Ladd Trusts.
“[Herbert] resigned as co-trustee of the Virginia C. Stockham Trust on November 18, 2008, and as co-trustee of the Herbert C. Stockham Trust on November 25, 2008, Ladd filed her original complaint on July 23, 2012, nearly four years after [Herbert’s] resignation. She alleges that he breached his fiduciary duty to the Trusts by failing to cause SVI to redeem the preferred shares held by the Ladd Trusts by early 2000, when she claims the Company still had sufficient assets to do so. However, it is undisputed that SVI had certain known and potential liabilities to its creditors and claimants as of December 31, 1997, when the Company’s shareholders approved the sale of substantially all of its assets to Crane Co.; [6] that SVI has never redeemed its preferred shares and has not otherwise made a liquidation distribution to shareholders; and that, to this day, SVI retains its corporate form for purposes of satisfying its remaining obligations to creditors.
“It is also undisputed that, following its 1997 asset sale, SVI provided regular reports to its shareholders regarding its financial condition, the disposition of its remaining assets, and various on-going and contingent liabilities. For instance, in April 2004, [Herbert] informed SVI shareholders of the Company’s ‘obligation to address its known and contingent liabilities,’ and that ‘the Board of Directors may not distribute funds to Shareholders if those funds should have been preserved for the benefit of creditors.’ And, while SVI continued to pay *462 dividends on the preferred shares for a number of years after the sale of assets to Crane Co., [Herbert] informed shareholders in November 2004 that the Company would suspend payment of dividends in order to preserve assets for creditors, and that the suspension of dividends ‘[would] probably remain in effect until the Company is liquidated, and thus shareholders should not expect to receive dividends in the future.’ When SVTs financial position had not improved by July 2007, SVI informed shareholder that it was ‘unlikely that there [would] be funds left to distribute to shareholders.’
“By the time [Herbert] resigned as individual co-trustee of [the Herbert C. Stockham Trust and the Virginia C. Stockham Trust] in November 2008, SVI still had not made any liquidation distribution to shareholders. Both the Herbert C. Stockham Trust and the Kate F. Stockham Trust were terminated on July 21, 2010, by Order of the Probate Court of Jefferson County, as was the portion of the Virginia C. Stockham Trust which held SVI stock. The other assets of the Virginia C. Stockham Trust were transferred to Regions Bank as the successor corporate trustee.”
(Footnotes omitted.) After setting forth these facts, the circuit court concluded that Ladd’s breach-of-fiduciary-duty claim against Stockham was barred by the applicable statute of limitations. The circuit court also concluded that, even if Ladd’s claim was not barred by the applicable statute of limitations, Stockham was entitled to a summary judgment on the merits of Ladd’s breach-of-fiduciary-duty claim for “independently sufficient reasons.” Ladd timely appealed the circuit court’s judgment on January 15, 2015.[7]
On October 20, 2014, Stockham filed a motion for “reimbursement of fees and expenses.” In her motion, Stockham argued that, pursuant to Rule 54(d), Ala. R. Civ. P., §§ 19-3B-708 and -709, Ala.Code 1975, and § 34-3-60, Ala.Code 1975, she is entitled to reimbursement for costs and attorney fees in defending Ladd’s action against Herbert as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust. On January 14, 2015, the circuit court denied Stockham’s motion. On January 23, 2015, Stockham cross-appealed from the circuit court’s denial of her motion for costs and attorney fees.
Both Ladd’s appeal and Stockham’s cross-appeal were from nonfinal judgments because Ladd’s claims against SVI had not yet been adjudicated. Accordingly, on September 2, 2015, this Court remanded the case for the circuit court to adjudicate the claims against SVI or to certify its September 18, 2014, judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. On remand, the circuit court certified its September 18, 2014, judgment in favor of Stockham as final pursuant to Rule 54(b). On December 1, 2015, this Court again remanded the case for the circuit court to adjudicate the claims against SVI or to certify its January 14, 2015, order as final pursuant to Rule 54(b). On remand, the circuit court entered an order stating that SVI “is hereby dismissed without prejudice,” an action it said “disposes of the case in its entirety.” Accordingly, the January 14, 2015, order is properly appeal- *463 able because all claims against all parties have been finally adjudicated.

II. Discussion

1H0S65 — Ladd’s appeal

Standard of Review

Concerning Ladd’s appeal of the summary judgment in favor of Stockham, this Court has set forth the following standard of review:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Analysis

First, Ladd argues that the circuit court erred in holding that her claim against Stockham is barred by the two-year statute of limitations. Ladd does not dispute that she brought her claim more than two years after the events that formed the basis for it occurred; Ladd argues only that there is a genuine issue of material fact concerning when she could have actually discovered her cause of action for breach of fiduciary duty against Herbert in his role as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust.
The circuit court held as follows concerning this issue:
“ ‘The statute of limitations applicable to a case alleging a breach of fiduciary duty allows two years to file the action,’ and ‘the statutory period begins to run at the point when the fiduciary relationship between the trustee and the beneficiary is terminated.’ McCormack v. AmSouth Bank, N.A., 759 So.2d 538, 541 (Ala.1999) (citing § 6—2—38(l)); see also Tonsmeire v. AmSouth Bank, 659 So.2d 601, 604 (Ala.1995). The trust relationship between [Herbert] and Ladd terminated in November 2008 when [Herbert] resigned as co-trustee of the Virginia C. Stockham and Herbert C. Stockham Trusts. Because she did not file suit against [Herbert] until July 23, 2012, Ladd’s claim is time-barred — and Stock-ham is entitled to summary judgment— unless the two-year limitations period was tolled for some period after it accrued upon [Herbert’s] resignation.10 The Court previously denied Stockham’s motion to dismiss Ladd’s claim as untimely because she alleged in her Second Amended Complaint that she ‘was kept from discovering her injuries until August 2011.’ However, the factual record developed through discovery does not *464 support Ladd’s allegation that she was not aware of ‘the existence of [her] cause of action’ by November 2008, when [Herbert] ended his service as a trustee. See DGB, LLC v. Hinds, 55 So.3d 218, 225 (Ala.2010).
“As noted above, Ladd’s breach of fiduciary duty claim against [Herbert] is based on his alleged ‘fail[ure] to take any action or demand that SVI redeem the preferred shares [held by the Ladd Trusts] as it said it would at the time it said it would.’ (Ladd’s Motion, at 17). According to Ladd, SVI should have begun to redeem its preferred shares when the Company ‘entered voluntary liquidation in 1998,’ and should have completed the redemption by early 2000. (Ladd’s Motion, at 1). No such redemption occurred, however, and Ladd certainly was aware of that fact for a decade before [Herbert] resigned as a trustee. Thus, while Ladd’s claim against [Herbert] was preserved so long as he continued to serve as a trustee, the statute of limitations on her claim began to run when he resigned in November 2008, and expired in November 2010, two years later.
[[Image here]]
“In short, the terms of the Trusts do not establish a genuine issue of material fact as to the date on which [Herbert’s] duty to the Trusts ended. That date was November 2008, and Ladd’s Complaint, filed in July 2012, therefore is barred by the two-year statute of limitations. Since there can be no doubt that Ladd knew the Trusts’ preferred SVT shares had not been redeemed as and when she alleges SVI should have done so, her assertion that her fellow co-trustees concealed or otherwise failed to provide her sufficient information to pursue a claim cannot be squared with logic.15 Ladd had ample opportunity, either as a co-trustee or as a beneficiary, to question or challenge the timing and substance of the SVI board of directors’ decisions concerning the satisfaction of SVI’s claims and liabilities, but chose not do so.16
[[Image here]]
“10Ladd suggests that the two-year limitations period did not begin to run ‘until at least July 21, 2010, when the Probate Court entered its Order terminating the Trusts.’ (Ladd’s Opp. to Defs’ Joint Motion, at 31). As noted above, however, the ‘limitations period for an action based on breach of fiduciary duty begins to ran once the fiduciary relationship is terminated,’ not once the trust itself is terminated. Tonsmeire, 659 So.2d at 604 (quotation and alterations omitted).
[[Image here]]
“ 15The Court nevertheless notes that by July 2007, well over a year before [Herbert’s] resignation, SVI had furnished Ladd with a series of shareholder reports (authored, for the most part, by [Herbert]), as well as annual financial statements. The reports explained that SVI could not make a liquidation distribution to shareholders because of its obligations to creditors and that, in view of those obligations, even a partial redemption of preferred shares was unlikely. See Charles Stockham Aff., Ex. 1-4. SVI’s financial statements, in turn, reflected that expenses associated with the winding up of its affairs left it unable to redeem preferred shares. See [Anita] Aaron Aff., Ex. 3.
“Because Ladd had knowledge [of] all of the facts necessary to assert any claim against [Herbert] or SVI based on its failure to redeem the preferred shares held by the Ladd Trusts by 2000, her failure to do so also constitutes consent, ratification, and acquiescence to *465 the conduct she belatedly complains of. See Walding v. Walding, 320 So.2d 687, 689 (Ala.Civ.App.1975) (‘The general rule in Alabama is that the beneficiary who, with knowledge of all the facts, accepts the proceeds of an investment made by the trustee, is thereafter es-topped from surcharging the trustee on grounds that such an investment was improperly made.’); Ala.Code [1975,] § 19-3B-1009 (‘A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach, released the trustee from liability for the breach, or ratified the transaction constituting the breach.’).
“ 16While Ladd insists that ‘[t]he Alabama Supreme Court’s holding in Ex parte Callen [sic] is dispositive of Defendants’ liability in this case’ (Ladd’s Motion, at 13), she fails to acknowledge that ‘[i]t has long been the law in Alabama that lohere a trustee does not perform his duty to protect the trust, the beneficiaries may sue in equity to protect their rights.’ Ex parte Callan Associates, Inc., 87 So.3d 1161, 1166 (Ala.2011) (emphasis in original; alterations and quotations omitted). Because Ladd was in a position to challenge SVI’s failure to redeem its preferred shares at a time when she claims [SVI] had sufficient assets to do so, the untimely assertion of her claim against [Herbert] requesting the same relief also is barred by the doctrine of laches.”
Initially, we must clear up some confusion Ladd’s argument on appeal creates. Ladd alleged in her complaint that she was suing Herbert in his capacity as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust for an alleged breach of fiduciary duty based on Herbert’s alleged mismanagement of SVI in his capacity as a member of SVI’s board of directors. However, in her summary-judgment motion, Ladd specifically alleged that Herbert breached his fiduciary duty to Ladd as cotrustee of the Herbert C. Stockham Trust and the Virginia C. Stockham Trust by failing to demand that SVI redeem the preferred shares of SVI stock held by those trusts as SVI’s board of directors represented that SVI would at the December 1,1997, shareholders meeting.[8] In entering the summary judgment for Stockham, the circuit court considered the theory of the case asserted by Ladd in her summary-judgment motion. In so doing, the circuit court determined that Ladd’s breach-of-fiduciary-duty claim against Herbert was barred by the applicable statute of limitations because Ladd knew, at least by 2000, that SVI had not redeemed the preferred shares of SVI stock held by the trusts.
On appeal, Ladd attempts to alter her theory of the case by arguing that her breach-of-fiduciary-duty claim against Herbert in his capacity as cotrustee of the Herbert C. Stockham Trust and the Virginia C. Stockham, Trust was based on “more than simply his failure to demand that SVI’s stock shares be redeemed at the *466 time SVI represented it would redeem such shares.” Ladd’s brief, at p. 17. Ladd now alleges that her breach-of-fiduciary-duty claim against Herbert includes Herbert’s “failure to protect the assets of the [Herbert C. Stockham Trust and the Virginia C. Stockham Trust], including SVI stock held by [the Herbert C. Stock-ham Trust and the Virginia C. Stockham Trust], while serving as cotrustee of [the Herbert C. Stockham Trust and the Virginia C. Stockham Trust] at the same time he was a director of SVI.” Id.
Although Ladd did allege in her initial complaint that Herbert “breached these fiduciary duties by managing SVI in such a way that the value of [the Herbert C. Stockham Trust and the Virginia C. Stock-ham Trust] was completely destroyed,” Ladd clearly abandoned this theory of the ease in her summary-judgment motion. Ladd cannot now revive on appeal the argument she did not pursue at the summary-judgment stage of the proceedings.[9] Therefore, the only arguments of Ladd’s properly before us pertaining to whether the statute of limitations should be tolled are those arguments concerning whether Ladd knew or should have known that SVI failed to redeem its preferred stocks in 2000, the date Ladd alleges the SVI board of directors stated SVI would redeem its preferred stocks.
Another initial matter, which the parties do not directly address, is which statute of limitations applies in this case: both § 6—2—38(l), Ala.Code 1975, and § 19-3B-1005, Ala.Code 1975, are potentially applicable. In entering a summary judgment in favor of Stockham, it appears that the circuit court relied upon § 6-2-38(l), a general statute of limitations that states: “All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.” The circuit court also relied upon two cases, McCormack v. AmSouth Bank, N.A., 759 So.2d 538, 541 (Ala.1999), and Tonsmeire v. AmSouth Bank, 659 So.2d 601, 604 (Ala.1995), which applied § 6—2—38(l), or its predecessor statute, to bar a breach-of-fiduciary-duty claim against a trustee. However, since McCormack and Tonsmeire were decided, Alabama adopted the Uniform Trust Code, with some revisions, effective January 1, 2007.
Section 19-3B-1005, part of the Alabama Uniform Trust Code, specifically applies to actions brought by beneficiaries against trustees and is the applicable limitations statute in this case. Section 19-3B-1005 provides:
“(a) A beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary or a representative of the beneficiary was sent a report that adequately disclosed the existence of a potential claim for breach of trust.
“(b) A report adequately discloses the existence of a potential claim for breach of trust if it provides sufficient information so that the beneficiary or representative knows of the potential claim or should have inquired into its existence.
“(c) If subsection (a) does not apply, then a judicial proceeding by a beneficiary against a trustee for breach of trust *467 must be commenced within two years after the first to occur of:
“(1) the removal, resignation, or death of the trustee;
“(2) the termination of the beneficiary’s interest in the trust; or
“(3) the termination of the trust.”
It is significant that we apply § 19-3B-1005 because it provides two bars to breach-of-fiduciary-duty claims against trustees. The first appears in § 19-3B-1005(a): “A beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary ... was sent a report that adequately disclosed the existence of a potential claim for breach of trust.” Under § 19-3B-1005(a), Ladd’s claim, properly understood as alleging that Herbert breached his fiduciary duty to Ladd as cotrustee of the Herbert C. Stockham Trust and the Virginia C. Stock-ham Trust by failing to take action to cause SVI to redeem the preferred stock held by the Herbert C. Stockham Trust and the Virginia C. Stockham Trust, would have been barred as early as 2002. Ladd was certainly aware in 2000, the date SVI represented that it would have completed redeeming the preferred stock, that the preferred stock had not been redeemed by SVI. Ladd has not presented any evidence indicating that Herbert, or any other individual or entity, sought to conceal the fact that the preferred stock was not redeemed by 2000. Therefore, under § 19-3B-1005(a), Ladd’s breach-of-fiduciary-duty claim against Herbert was barred as early as 2002.
Even if § 19-3B-1005(a) was not applicable, Ladd’s claim is barred under § 19-3B-1005(c). Section 19-3B-1005(c) mirrors the law as it was prior to Alabama’s adoption of the Uniform Trust Code effective in 2007. As the circuit court set forth, before 2007, § 6-2-38(l) was the applicable statute of limitations to claims brought by beneficiaries against trustees and “ ‘the statutory period beg[an] to run at the point when the fiduciary relationship between the trustee and the beneficiary [was] terminated.’ McCormack v. AmSouth Bank, N.A., 759 So.2d 538, 541 (Ala.1999) (citing § 6—2—38(l)); see also Tonsmeire v. AmSouth Bank, 659 So.2d 601, 604 (Ala.1995).” Similarly, § 19-3B-1005(c), as applicable here, states: “If subsection (a) does not apply, then a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within two years after ... the removal, resignation, or death of the trustee....”
Under § 19-3B-1005(c), Ladd’s claim had to be filed within two years of Herbert’s resignation in November 2008 as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust. Ladd, however, did not file her claim until July 21, 2012, nearly four years after Herbert resigned as cotrustee. Therefore, Ladd’s claim is also barred under § 19-3B-1005(c).
However, as the circuit court noted, this does not end the analysis. The following comment appears in the “Alabama Comment” to § 19-3B-1005:
“It is the intent of this Alabama enactment to preserve existing law in regard to when a statute of limitations may be tolled. See, e.g. Payton v. Monsanto Co., 801 So.2d 829, 834 (Ala.2001). ‘However, the plaintiff can overcome a defense of the limitations period [by averment and proof of circumstances permitting tolling of the running of the limitations period], such as fraud on the part of the defendant in concealing the wrongdoing ... or estoppel by reason of unfulfilled promises of the defendant in exchange for the plaintiffs agreement to postpone commencement of an action ....’”
*468 Therefore, § 19-3B-1005(a) and (c) • are subject to tolling. In fact, whether those provisions were tolled is the sole issue in Ladd’s appeal.
Section 6-2-3, Ala.Code 1975, commonly known as Alabama’s “savings clause,” states:
“In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.”
We note that Ladd’s claim is not one of fraud against Herbert. However, this Court has held that § 6-2-3 applies not only to fraud claims, but also “‘to the fraudulent concealment of the existence of a cause of action.’ ” DGB, LLC v. Hinds, 55 So.3d 218, 225-26 (Ala.2010)(quoting Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149 (1940)). “Alabama does recognize that a fraudulent concealment by a defendant tolls the running of the statute until the tort or injury is discovered or could have been discovered by due diligence.” Garrett v. Raytheon Co., 368 So.2d 516, 521 (Ala.1979), superseded by statute on other grounds, as noted in Johnson v. Garlock, Inc., 682 So.2d 25, 26 (Ala.1996).
Ladd’s tolling argument on appeal' is based on her allegation that she did "not receive accurate reports detailing the financial condition of SVI until 2011. Ladd acknowledges receiving account statements from Wells Fargo “through, the years,” but alleges that the statements she received from Wells Fargo indicated that SVTs financial position was better than it actually was. Ladd does not allege that Wells Fargo was attempting to conceal any facts from her; rather, she alleges that SVI did not provide Wells Fargo with the information it needed to compile accurate reports. Ladd also alleges that Herbert did not provide Ladd with any information concerning the Herbert G. Stockham Trust and the Virginia C. Stockham Trust while Herbert served as cotrustee of those trusts. Ladd also relies on facts indicating that SVI and its board of directors did not provide its shareholders with requested financial reports.
Although Ladd alleges that she did not receive . accurate financial reports from Wells Fargo and that SVI apparently did not provide all the information requested of it, it is undisputed that Ladd did receive financial reports directly from SVI detailing SVTs financial condition. The circuit court stated the following in its September 18, 2014, summary-judgment order in favor of Wells Fargo:
“SVI Corporation provided regular reports to its shareholders (including Mrs. Ladd) regarding SVI Corporation’s financial condition, the disposition of remaining assets, and various on-going and contingent liabilities.3
[[Image here]]
“3At the hearing on September 12, 2014, Mrs. Ladd’s counsel dismissed those financial reports as ‘Defendants’ documents’ and apparently questioned whether Mrs. Ladd had received the reports. However, the reports (and the fact that they were provided to Mrs. Ladd) are clearly stated in numbered paragraph 47 of Defendants’ Narrative Summary of Undisputed Facts. This paragraph cites the Affidavits by Anita Aaron and Charles Stockham, and both of those Affidavits discussed the reports sent to shareholders and confirmed that Mrs. Ladd’s address was on the company’s mailing list. Because Mrs. Ladd never responded to paragraph 47 of Defendants’ Narrative Summary of Undisputed Facts in her briefing and failed to *469 submit any evidence to dispute her receipt of the reports, the court accepts, as undisputed, the fact that Mrs. Ladd received the reports.”
Therefore, as the circuit court determined, it is undisputed that Ladd received financial reports from SVI detailing SVTs financial condition; Ladd has not presented any evidence indicating that the reports are not accurate.
Ladd fails to explain how the above facts create a genuine issue of material fact as to whether Ladd knew or should have known that her cause of action against Herbert, in his capacity of cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust, alleging breach of fiduciary duty had accrued. Specifically, Ladd fails to explain how the above facts relate to the fact that Ladd knew by 2000 that SVI had not redeemed the preferred shares of SVI stock held by the Herbert C. Stockham Trust and the Virginia C. Stockham Trust. Ladd also knew by 2000 that Herbert, in his capacity as eotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust, had taken no action to encourage or require SVI to redeem the preferred shares of SVI stock.
The circuit court set forth the following facts in its order:
“It is also undisputed that, following its 1997 asset sale, SVI provided regular reports to its shareholders regarding its financial condition, the disposition of its remaining assets, and various on-going and contingent liabilities. For instance, in April 2004, [Herbert] informed SVI shareholders of the Company’s ‘obligation to address its known and contingent liabilities,’ and that ‘the Board of Directors may not distribute funds to Shareholders if those funds should have been preserved for the benefit of creditors.’ And, while SVI continued to pay dividends on the preferred shares for a number of years after the sale of assets to Crane Co., [Herbert] informed shareholders in November 2004 that the Company would suspend payment of dividends in order to preserve assets for creditors, and that the suspension of dividends ‘[would] probably remain in effect until the Company is liquidated, and thus shareholders should not expect to receive dividends in the future.’ When SVI’s financial position had not improved by July 2007, SVI informed shareholders that it was ‘unlikely that there [would] be funds left to distribute to shareholders.’ ”
Ladd has not presented substantial evidence rebutting those facts. Accordingly, Ladd has not demonstrated that the circuit court erred in entering a summary judgment for Stockham; thus, we affirm the circuit court’s judgment. This conclusion on the statute-of-limitations issue renders moot all of Ladd’s remaining arguments concerning the separate and independent reasons the circuit court entered a summary judgment in favor of Stockham.
11⅛0⅛07 — Stockham’s cross-appeal

Standard of Review

In Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692, 710 (Ala.2008), this Court set forth the following standard of review concerning the taxation of costs under Rule 54(d):
“[T]his Court’s caselaw is well settled that the taxation of costs is discretionary with the trial court. See, e.g., Smith v. Smith, 482 So.2d 1172, 1175 (Ala.1985) (‘The taxation of costs pursuant to [Rule 54(d), Ala. R. Civ. P.,] is generally left to the sound discretion of the trial judge.’); Vulcan Oil Co. v. Gorman, 434 So.2d 760, 762 (Ala.1983) (‘[T]he taxation of costs ... rests in the discretion of the *470 trial judge, whose decision will not be reversed unless clear abuse is shown.’).”
In Regions Bank v. Lowrey, 154 So.3d 101, 108 (Ala.2014), this Court set forth the following standard of review of an award of attorney fees:
“ ‘ “The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).”’”
(Quoting Kiker v. Probate Court of Mobile Cty., 67 So.3d 865, 867-68 (Ala.2010), quoting in turn Pharmacia Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004).)

Analysis

After the circuit court entered a summary judgment for Stockham, Stock-ham filed a motion seeking reimbursement of costs and attorney fees under §§ 34-3-60, 19-3B-708, and 19-3B-709, Ala.Code 1975. The circuit court denied Stockham’s motion. On appeal, Stockham maintains that she is entitled to costs and attorney fees under the above-cited statutes.
Stockham argues that the circuit court erred in denying her request for expenses and attorney fees under §§ 19-3B-708, 19-3B-709, and 34-3-60. Sections 19-3B-709 and 34-3-60 both allow for attorney fees to be assessed in cases concerning the “administration” of a trust. Section 19-3B-709 provides, in pertinent part:
“(a) A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate for:
“(1) expenses that were properly incurred in the administration of the trust, including the defense or prosecution of any action, whether successful or not, unless the trustee is determined to have willfully or wantonly committed a material breach of the trust.”
Section 34-3-60 provides, in pertinent part:
“In all actions and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust ... the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney’s fee, to be paid to the attorneys or solicitors representing the trust ... and is authorized to tax as a part of the costs in such action or proceeding such reasonable attorney’s fee....”
The circuit court determined that Stock-ham was not entitled to attorney fees under those statutes for two reasons. First, the circuit court concluded that Herbert was not involved with the administration of the Herbert C. Stockham Trust and the Virginia C. Stockham Trust. The circuit court stated that “(t]his case did not involve the management and distribution of property held in a trust; rather, Ladd’s action against Stockham alleged claims of breach of fiduciary duty for [Herbert’s] failure to protect the Trusts’ property as a former co-trustee and director of SVI.” Second, the circuit court concluded that Stockham was not entitled to attorney fees because Herbert was sued after he had resigned as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust.
Stockham argues that the circuit court’s decision is in error based on this Court’s decisions in Regions Bank v. Lowrey, 101 So.3d 210 (Ala.2012)(“Regions I”), and Re *471 gions Bank v. Lowrey, 154 So.3d 101 (Ala.2014)("Regions II”), appeals concerning the same case. In Regions I and Regions II, the beneficiaries of a trust sued the trustee alleging a breach of fiduciary duty. The trial court found in favor of the trustee, and the trustee requested reimbursement of attorney fees and costs under § 19-3B-709 and Rule 54(d), respectively. The trial court denied the trustee’s request for attorney fees, but granted the request for costs. The trustee and the beneficiaries appealed.
In Regions I, this Court affirmed the trial court’s judgment on the beneficiaries’ breach-of-fiduciary-duty claim in favor of the trustee. This Court also determined that the trustee was entitled to attorney fees under § 19-3B-709, as follows:
“In Alabama, attorney fees are to be awarded only if they are provided for by statute, contract, or special equity. Hart v. Jackson, 607 So.2d 161, 163-64 (Ala.1992). Reimbursement for expenses, including attorney fees, incurred by a trustee in defending an action is allowed pursuant to § 19-3B-709, Ala.Code 1975, provided that the trustee has not committed a material breach of the trust....
[[Image here]]
“Furthermore, when a trustee defends itself against attacks concerning the management of trust assets, the trustee is entitled to recover its litigation expenses, including attorney fees, from the trust. See, e.g., Farlow v. Adams, 474 So.2d 53, 59 (Ala.1985).”
101 So.3d at 220.
On remand, the trial court awarded the trustee attorney fees, but not an amount sufficient to reimburse the trustee. Accordingly, the trustee appealed the trial court’s award of attorney fees. In Regions II, this Court stated:
“In Farlow v. Adams, 474 So.2d 53, 59 (1985), this Court set forth the following rationale for reimbursing a trustee for a successful defense of its administration of a trust:
“‘The issue of whether defending against an unsuccessful attempt to remove a trustee is considered a personal benefit to the trustee and not a common benefit of the trust was addressed in Weidlich v. Comley, 267 F.2d 133 (2d Cir.1959). There, Judge Learned Hand held:
“ ‘ “Coming then to the merits of the dispute, the plaintiffs first complaint is the allowance to the defendant out of the trust assets of his expenses in defending himself in the action. The argument is that these expenses were incurred in the defendant’s individual interest, and may not be charged against the trust. That completely misses the true situation: a trustee was appointed to administer the assets; the settlor selected him to do so, and whatever interferes with his discharge of his duty pro tanto defeats the settlor’s purpose. When the trustee’s administration of the assets is unjustifiedly assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor’s purpose. To compel him to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled and which was a part of the inducement to his acceptance of the burden of his duties. This has been uniformly the ruling, so far as we have found. Jessup v. Smith, 223 N.Y. 203, 207, 119 N.E. 403 [ (1918) ]; Matter of Bishop’s Will, 277 App.Div. 108, 98 N.Y.S.2d 69, 301 N.Y. 498, 95 N.E.2d 817 [ (1950) ]; Gordon v. Guernsey, 316 *472 Mass. 106, 55 N.E.2d 27 [ (1944) ]; Scott on Trusts, § 188.4.”
“‘267 F.2d at 134.’
“We similarly conclude that denying a trustee reimbursement for expenses incurred while pursuing reimbursement for the successful defense of the claims against it would ‘diminish the compensation to which [the trustee] is entitled and which was a part of the inducement to [the trustee’s] acceptance of the burden of [the trustee’s] duties.’ Farlow, 474 So.2d at 59.”
154 So.3d at 111-12. This Court again reversed the trial court’s judgment and remanded the case for the trial court to reconsider its award of attorney fees and costs to the trustee.
The above-quoted excerpts from Regions I and Regions II unequivocally state that § 19-3B-709(a)(1) entitles a trustee to reimbursement of costs, including attorney fees, when the trustee successfully defends himself against a breach-of-fiduciary-duty claim brought by a beneficiary of the trust. Regions I and Regions II make clear that a trustee’s management ■ of the assets of the trust is, in fact, considered to be the administration of the trust. Therefore, Stockham has demonstrated that the circuit court’s conclusion that Herbert was not involved in the administration of a trust is contrary to our precedent. Herbert, in deciding as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust to not take action to have the preferred shares of the SVI stock redeemed by SVI, was certainly involved with the administration of those trusts.
Moreover, we disagree with the following characterization of Ladd’s breach-of-fiduciary-duty claim against Herbert by the circuit court in its January 14, 2015, order denying Stockham’s request for costs, attorney fees, and litigation expenses: “Ladd’s action against [Herbert] alleged claims of breach of fiduciary duty for [Herbert’s] failure to protect the Trusts’ property as a former co-trustee and director of SVI.” (Emphasis added.) However, in its September 18, 2014, order entering a summary judgment for Stock-ham, the circuit court characterized Ladd’s breach-of-fiduciary-duty claim as follows:
“As noted above, Ladd’s breach of fiduciary duty claim against [Herbert] is based on his alleged ‘failure] to take any action or demand that SVI redeem the preferred shares [held by the Herbert C. Stockham Trust and the Virginia C. Stockham Trust] as it said it would at the time it said it would.’ (Ladd’s Motion, at 17). According to Ladd, SVI should have begun to redeem its preferred shares when the Company ‘entered voluntary liquidation in 1998,’ and should have completed the redemption by early 2000. (Ladd’s Motion, at 1).”
As set forth at length above, Ladd’s breach-of-fiduciary-duty claim against Herbert is, in essence, that, while he was cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust, Herbert should have taken actions to ensure that SVI would redeem the preferred shares of SVI stock held by the Herbert C. Stockham Trust and the Virginia C. Stockham Trust. According to Ladd, Herbert failed to take those actions while he was cotrustee, and that is the basis of Ladd’s claim against Herbert. The circuit court’s suggestion in its January 14, 2015, order that Ladd’s breach-of-fiduciary-duty claim against Herbert was based on actions Herbert allegedly failed to take after he resigned as cotrustee is not consistent with its earlier order.
Therefore, we conclude that the circuit court’s holding that Stockham is not entitled to reimbursement for attorney fees and costs under §§ 19-3B-708, 19-3B-709, and 34-3-60 for the successful defense of Ladd’s claim against Stockham is in error. Ladd’s breach-of-fiduciary-duty claim *473 against Herbert was based on actions Herbert took while acting as cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust, and his actions concerned the assets of those trusts; Herbert was certainly involved in the administration of those trusts and was sued for decisions he made concerning assets held by those trusts. Under Regions I and Regions II, a trustee is entitled to reimbursement of attorney fees and costs for the successful defense of a breach-of-fiduciary-duty claim against the trustee.
Stockham also argues that the circuit court’s holding that Stockham cannot recover attorney fees for the defense of Ladd’s claim against Stockham because Herbert is no longer the cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust is in error. Stockham recognizes that there is no Alabama caselaw concerning this issue; however, she does direct this Court’s attention to Morrison v. Watkins, 20 Kan.App.2d 411, 889 P.2d 140 (1995).
In Morrison, former trustees of a trust were sued by a beneficiary; the suit alleged breach of fiduciary duties. The trial court entered a summary judgment in favor of the former trustees. The former trustees then requested reimbursement for attorney fees and costs, which the trial court denied. The former trustees appealed. On appeal, the Court of Appeals of Kansas stated:
<£We must first decide whether K.S.A. 59-1717[10] applies only when the expenses are incurred during the administration of the trust rather than after the trustees’ dismissals. While Kansas has not addressed the issue of whether former trustees should be allowed their expenses for litigation that occurred as the result of their actions as trustees, at least one court has so ruled. See Preston Corp. v. Reeves, 762 F.Supp. 948 (N.D.Ga.1991) (holding that a former trustee’s defense of its actions as trustee are chargeable to the trust). A trustee should be able to recover expenses regardless of whether the trustee was sitting at the time the suit was instigated as long as the reason for the suit was an action which occurred while the trustee was a trustee. We therefore conclude that under K.S.A. 59-1717, a trustee is entitled to expenses necessarily incurred in successfully defending the trustee’s *474 actions as trastee even when those expenses are incurred after the trustee’s termination as trustee.”
20 Kan.App.2d at 425, 889 P.2d at 150.
We find the reasoning of the Court of Appeals of Kansas persuasive. In Alabama, trustees are entitled “to compensation that is reasonable under the circumstances.” § 19-3B-708(a). This Court stated in Regions II that when a
“ ‘ “trustee’s administration of the assets is unjustifiedly assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor’s purpose. To compel him to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled and which was a part of the inducement to his acceptance of the burden of his duties.” ’ ”
154 So.3d at 111 (quoting Farlow v. Adams, 474 So.2d 53, 59 (Ala.1985), quoting in turn Weidlich v. Comley, 267 F.2d 133, 134 (2d Cir.1959)).
As in Morrison, Herbert was sued fox-actions taken — oí-, more accurately stated, not taken — while he was acting as the cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust. As explained by the Morrison court, the mere fact that Herbert is no longer the cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust is not a reason to deny Stockham reimbursement of costs or attorney fees. To hold otherwise would prevent trustees from defending themselves against even unjustifiable assaults, which would ultimately frustrate the settlor’s purpose in establishing the trust.
Stockham has demonstrated that the circuit court exceeded its discretion in denying Stockham’s request for reimbursement of costs and attorney fees under §§ 19-3B-708, 19-3B-709, and 34-3-60. Ladd’s breach-of-fiduciax-y-duty claim against Herbert was based on Herbert's actions while he was cotrustee of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust. Herbert was certainly involved with the administration of the Herbert C. Stockham Trust and of the Virginia C. Stockham Trust; it is not relevant that Herbert was not serving as the cotrastee of those trusts at the time he was sued. Accordingly, we reverse the circuit court’s judgment denying Stockham costs and attorney fees and remand the matter to the circuit court for it to reconsider Stockham’s motion.

III. Conclusion

Based on the foregoing, in case no. 1140365, we affirm the summary judgment in favor Stockham. In case no. 1140407, we i-everse the circuit coui-t’s order denying Stockham’s motion for the reimbursement of costs, attorney fees, and litigation expenses and remand the case for the circuit court to reconsider Stockham’s motion.
1140365 — AFFIRMED.
MOORE, C.J., and STUART, BOLIN, MURDOCK, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
1140407 — REVERSED AND REMANDED.
STUART, MAIN, WISE, and BRYAN, JJ., concur.
BOLIN, J., concurs in the result.
SHAW, J., dissents in part and concurs in the result.
MOORE, C.J., and MURDOCK, J., dissent.

. SVI Corporation used to be named Stock-ham Valve & Fittings, Inc. Any reference by the parties or the circuit court to SVI Corporation or Stockham Valve & Fittings, Inc., is a reference to the same entity.

. According to the circuit court’s “Findings of Undisputed Facts,” “[a]t all relevant times, both Mrs. Ladd and [Herbert] were officers and/or directors of SVI Corporation.”

. Herbert died in 2013 and his estate was substituted as a party.

. In her second amended complaint, Ladd added SVI as a party, SVI was subsequently dismissed from the action.

. Also on September 18, 2014, in a separate order, the circuit court entered a summary judgment in favor of Wells Fargo and against Ladd.

. As set forth earlier in this opinion, the parties indicate that this approval occurred on December 1, 1997; the parties do not explain the discrepancy between these dates.

. On October 16, 2014, Ladd filed a motion pursuant to Rule 59(e), Ala. R. Civ. P., to alter, amend, or vacate the circuit court’s summary judgment in favor of Wells Fargo; Ladd did not file a postjudgment motion con-ceming the circuit court’s summary judgment in favor of Stockham. The circuit court denied Ladd’s postjudgment motion concerning the summary judgment in favor of Wells Fargo on December 2, 2014.

. Ladd reiterated this argument in a response she filed in the circuit court to Stockham’s and Wells Fargo’s summary-judgment motions:
"As set forth in Ladd’s Motion for Summary Judgment .... the cause of action against SVI’s Board of Directors for their failure to redeem the preferred shares as they promised they would, lay with Wells Fargo and [Herbert] as the co-trustees.... The undisputed facts show that [neither] Wells Fargo nor [Herbert] ever made any inquiries or demands on SVI regarding redemption of the preferred shares. As a result of Wells Fargo and [Herbert]'s failure to act, the value of the redemption of the preferred shares decreased over time until there was nothing left to distribute.”

. We also note that Ladd’s argument that Herbert breached his fiduciary duty as cotrus-tee of the Herbert C. Stockham Trust and the Virginia C. Stockham Trust by mismanaging SVI in his capacity as a director of SVI certainly sounds like a derivative claim. As noted above, the circuit court dismissed all derivative claims asserted by Ladd against Herbert and Wells Fargo.

. Kansas Statutes Annotated, § 59-1717, states:
"Every fiduciary shall be allowed his or her necessary expenses incurred in the execution of his or her trust, and shall have such compensation for services and those of his or her attorneys as shall be just and reasonable. At any time during administration the fiduciary may apply to the court for an allowance upon his or her compensation and upon attorneys’ fees.”
The above Kansas statute is similar to the language set forth in § 19-3B-708(a) and § 19-3B-816(a)(24) and (28), Ala.Code 1975. Section 19-3B-708(a) states: “If the terms of a trust do not specify the trustee’s compensation, then a trustee is entitled to compensation that is reasonable under the circumstances.” Section 19-3B-816(a) states, in pertinent part:
“[A] trustee may:
[[Image here]]
"(24) prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee’s duties and to employ counsel, expert witnesses, or other agents;
[[Image here]]
"(28) employ and compensate persons deemed by the trustee needful to advise or assist in the proper management and administration of the trust, including, but not limited to, ... attorneys-at-law, attorneys-in:fact ... so long as the relationship and the fees charged are reasonable and disclosed in any reasonable manner to the current beneficiaries.... ”